J-A09028-18

2018 PA Super 229

| | | |
|---|---|---|
| G.A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.M.W. | : | |
| | : | |
| | : | No. 1694 WDA 2017 |
| v. | : | |
| | : | |
| | : | |
| S.J. AND R.J. | : | |
| | : | |
| | : | |
| APPEAL OF: G.P. AND J.P., | : | |
| PATERNAL GRANDPARENTS | : | |

Appeal from the Order Entered October 10, 2017
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10862 C.D. 2016

BEFORE:  BOWES, J., DUBOW, J., and MURRAY, J.

CONCURRING OPINION BY BOWES, J.:    FILED: August 15, 2018

My colleagues present a cogent expression of rationale which interprets the statutory framework as resolving the question of a grandparent's standing to pursue any form of physical or legal custody pursuant to 23 Pa.C.S § 5324(3), as a matter of fairness between the rights of the litigants, S.J. and R.J. ("Maternal Great-Grandparents"), and potential interveners, G.P. and J.P. ("Paternal Grandparents" or "Appellants"), respectively.  However, approaching this case from the perspective of promoting the interest of the child, J.P., rather than evenhandedness between third-party litigants, I agree with the trial court's finding that Appellants failed to establish that J.P. was

"substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity," as required by the statute, when they sought to intervene in the custody dispute. *See* 23 Pa.C.S. § 5324(3)(iii)(B). Specifically, contrary to the majority, I believe that the statute requires an actual risk of harm rather than an amorphous "ongoing" harm associated with the fact that Father retained his parental rights.

Notwithstanding my perspective of the conditional language in subsection 5324(3)(iii)(B), as I discuss *infra*, I observe that Appellants have standing to pursue custody under the newly-fashioned provisions that were recently added to the Child Custody Law at subsection 5324(4).[1] Accordingly, while I respectfully disagree with the majority's legal analysis, I concur with the learned majority's decision to reverse the order dismissing Appellants' petition to intervene.

J.P. was born during 2010, and he lived with Mother at Maternal Great-Grandparents' home recurrently throughout his life. As of October 2015, J.P. resided at Maternal Great-Grandparents' home exclusively. Father initiated this custody case during May 2016, by filing a complaint against Mother for partial physical custody. On July 26, 2016, Mother and Father entered a

---

[1] As the new provision became effective on July 3, 2018, Appellants did not have the opportunity to raise it in their brief or during the oral argument before this Court. Nevertheless, I observe that standing in a child custody case is variable, and the revised statute categorically provides Appellants a viable pathway to achieve standing in this dispute.

consent decree dividing the physical custody between them. However, four days later, Maternal Great-Grandparents filed a petition for emergency custody and a petition to intervene. They invoked standing pursuant to § 5324(3)(iii)(B), in order to protect their great-grandson from the tangible risk of harm stemming from Father's inappropriate sexual behavior with the child. The trial court vacated the July 2016 consent decree and awarded emergency custody to Maternal Great-Grandparents without a hearing. Appellants did not invoke standing under § 5324 at that time or seek to intervene in the ensuing custody proceedings between their son and Maternal Great-Grandparents.

In August 2016, the trial court expressly granted Maternal Great-Grandparents' petition to intervene in the custody litigation. Following a December 2016 mediation conference, Maternal Great-Grandparents and Father entered a consent order that granted Maternal Great-Grandparents primary physical custody of J.P. and permitted Father to exercise one-hour of supervised physical custody per week at a facility operated by the CARE Center of Indiana County ("CARE"). The consent order provided that, after five successful visits, CARE could elect to remove the supervision requirement, and Father would exercise overnight custody on alternating weekends. While it is not documented in the certified record, CARE seemingly relaxed the supervision requirement. Appellants did not seek to participate in the conference and they were not parties to the consent decree.

In May 2017, Maternal Great-Grandparents filed a petition for special relief seeking to impose a requirement that Father submit to drug screens and requesting that Father's interactions with J.P. be limited to supervised visitations. The custody court entered an interim order that suspended Father's periods of unsupervised custody and directed that a family member supervise Father's custodial periods pending the evidentiary hearing. After Father failed to appear at the ensuing hearing, the trial court entered an order continuing the force and effect of the interim order "until further Order of Court." Trial Court Opinion, 10/10/17, at 2.

On June 28, 2017, almost one year after Maternal Great-Grandparents first reacted to Father's alleged sexual behaviors toward J.P. by petitioning to intervene pursuant to § 5324(3)(iii)(B), and subsequently alleviating that risk by exercising primary physical custody for six months, and approximately two months after Maternal Great-Grandparents renewed their alarm following discovery of Father's substance abuse, Appellants filed a petition to intervene pursuant to § 5324(3)(iii)(B). Appellants requested partial physical custody of J.P., shared legal custody, and the authority to oversee any periods of supervised visitation Father could receive in the future. Maternal Great-Grandparents filed preliminary objections to Appellants' petitions, which the trial court sustained without a hearing. This appeal followed.

As this Court previously explained,

> In the area of child custody, principles of standing have been
> applied with particular scrupulousness because they serve a dual

- 4 -

purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

***D.G. v. D.B***., 91 A.3d 706, 708 (Pa.Super. 2014) (quoting ***J.A.L. v. E.P.H.***, 682 A.2d 1314, 1318 (Pa.Super. 1996)). Standing in child custody cases is fluid and, in some circumstances, it may be revisited as the facts of the case evolve throughout the litigation. ***M.G. v. L.D.***, 155 A.3d 1083, 1087 n.5 (Pa.Super. 2017); ***see e.g.***, ***In re D.M.***, 995 A.2d 371, 375-76 (Pa.Super. 2010) (mother whose parental rights had been terminated could have standing as third-party to seek custody); ***Morgan v. Weiser***, 932 A.2d 1183, 1186-87 (Pa.Super. 2007) (biological father whose parental rights had been terminated could only seek custody or visitation if he could establish standing as a third-party); ***McNamara v. Thomas***, 741 A.2d 778, 781 (Pa.Super. 1999) (biological mother could attempt to demonstrate third-party standing after death of adoptive parent).

At the time that Appellants filed their petition to intervene, the Child Custody Law extended standing to pursue any form of physical or legal custody to :

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324.

Thus, the question before us is whether Appellants had standing to pursue physical custody of J.P. pursuant to § 5324(3)(iii)(B) based upon the factual scenario at the time they filed their petition to intervene, *i.e.*, whether "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity."[2] *Id*.

In my view, Appellants failed to demonstrate the requirements for standing pursuant to 23 Pa.C.S. § 5324(3)(iii)(B), inasmuch as they did not attempt to assume responsibility for J.P. until after Maternal Great-Grandparents had filled the parental void and alleviated the substantial risk of

_____

[2] The parties agree that Appellants established the threshold requirements under § 5324(3)(i) and (ii).

harm that is the *sine qua non* of standing under this subparagraph. Stated plainly, thanks to Maternal Great-Grandparents' quick intervention, J.P. is no longer substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity.

Unlike my colleagues, I would not characterize the present factual scenario as a zero-sum race between the parties to file for standing first, *i.e.*, a situation where a win for one side necessarily entails a corresponding loss for the other side. It is axiomatic that the haste to file is not to bar an opponent's participation; rather, it is to ensure the child's best interests by alleviating the risk of harm at the earliest possible stage. Indeed, Appellants could have, but neglected to, file a petition to intervene in the underlying custody litigation at the outset, when Maternal Great-Grandparents first identified the safety concerns contemplated in § 5324(3)(iii)(B). They declined to intervene at the critical juncture when J.P.'s safety was in the balance. Instead, Appellants waited for Maternal Great-Grandparents to intercede and provide the safety net that the statute was intended to create. Only after the tangible and identifiable risks were removed did Appellants seek to intervene. Stated another way, Appellants were not barred by Maternal Great-Grandparents' swift response to the obvious risk of harm; they were barred because the risk had subsided when they eventually acted.

Essentially, I disagree with the majority's reliance upon ***Martinez v. Baxter***, 725 A.2d 775 (Pa.Super. 1999) for the proposition that the

"substantial risk of parental abuse" condition includes theoretical future harms associated with a parent's retention of parental rights. As the majority phrases its holding, "Since parental rights have not been terminated or relinquished, it is possible for either parent to seek custody of Child. This possibility creates an ongoing risk to Child." Majority Opinion at 9. However, from my perspective, what may or may not happen between J.P. and Father at some unidentified point in the future is of no import to the determination of whether Paternal Grandparents can satisfy the statutory grounds for standing at this juncture.

In **Martinez**, **supra**, the trial court granted the preliminary objections filed by Children and Youth Services ("CYS") that challenged a grandmother's standing to petition for custody of her dependent grandson. The grandmother sought standing pursuant to § 5313(b), the predecessor to § 5324(3). The trial court sustained CYS's preliminary objections, concluding that the grandmother failed to plead the existence of one of the three sets of circumstances set forth in § 5313(b)(3).[3] As it relates to the issue in the case

_____

[3] Section 5313(b) provided:

**(b) Physical and legal custody**.--A grandparent has standing to bring a petition for physical and legal custody of a grandchild. If it is in the best interest of the child not to be in the custody of either parent and if it is in the best interest of the child to be in the custody of the grandparent, the court may award physical and legal custody to the grandparent. This subsection applies to a grandparent:

at bar, the trial court determined that the child was not "substantially at risk" under § 5313(b)(3), because he had been adjudicated dependent and placed in CYS's protective custody.

We reversed, and focusing on the provision's opening statement, "A grandparent has standing to bring a petition for physical and legal custody of a grandchild," we held that § 5313(b) conferred "automatic standing" on grandparents to petition for physical custody by virtue of their familial relationship to the child. *Id*. at 778. The **Martinez** Court reasoned that even though CYS had custody pursuant to a protective order, that fact did not deprive the grandmother of her **automatic standing** under § 5313(b). We explained,

> This subsection is a clear mandate which allows a grandparent to seek custody, indeed to have standing to do so, over the status of third parties who have no familial relationship with a child. We

---

> (1) who has genuine care and concern for the child;
>
> (2) whose relationship with the child began with the consent of a parent of the child or pursuant to an order of court; and
>
> (3) who for 12 months has assumed the role and responsibilities of the child's parent, providing for the physical, emotional and social needs of the child, or who assumes the responsibility for a child who has been determined to be a dependent child pursuant to 42 Pa.C.S. Ch. 63 (relating to juvenile matters) or who assumes or deems it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness. The court may issue a temporary order pursuant to this section.

23 Pa.C.S. § 5313(b) (repealed effective January 24, 2011).

will not interpret this statute to deprive grandparents of this privileged status merely because CYS has stepped in before the grandparent has had an opportunity to assert her interest in raising her grandchild.

*Martinez*, *supra* at 778. Significantly, we **specifically** declined to interpret the ostensibly qualifying language in subparagraphs (1), (2), and (3) as conditions precedent to standing. Instead, we reasoned that the situations enumerated in those subparagraphs were merely factors for the fact-finder to consider in addressing the merits of the grandparent's custody claim, *i.e.*, "to determine 'If it is the best interest of the child not to be in the custody of either parent and if it is in the best interest of the child to be in the custody of the grandparent[.]'"[4] *Id*. Thus, having found the grandparent had automatic standing, to the extent that the *Martinez* Court interpreted the statute's reference to a child who is "substantially at risk due to parental

_____

[4] Our High Court affirmed our order, utilizing identical reasoning that § 5313(b) conferred automatic standing to grandparents by virtue of their familial relationship notwithstanding the statute's conditional language. *R.M. v. Baxter ex rel. T.M.*, 777 A.2d 446, 451 (Pa. 2001) (unqualified language of statute provides that grandparent has standing to bring petition for physical and legal custody of grandchild).

In enacting § 5325 of the Child Custody Law, the legislature corrected the courts' interpretation of the prior statute as conveying "automatic standing" and expressly **conditioned** grandparent standing on the prerequisites outlined in the statute. Significantly, § 5325(3)(A) of the new statute addressed the factual scenario at issue in *Martinez* by expressly extending custody to grandparents of children who have been adjudicated dependent. Thus, it alleviated the *Martinez* Court's noted concern, that "anytime CYS sought dependent status for a child, a grandparent's ability to seek custody of his grandchild would be negated[.]" *Martinez*, *supra* at 778.

abuse" in relation to whether a grandparent has standing, that discussion is *dicta*.

Furthermore, while the language in the current statute tracks the earlier enactment, the **Martinez** Court's *dicta* was non-persuasive. Specifically, in my view, the majority's invocation of an "ongoing" harm based upon speculation that Father **might** place J.P. at risk **in the future** is unconvincing. Unlike the majority, I believe that the fact that either parent retained his or her parental rights is of no consequence to the determination regarding whether either parent presents a substantial risk to the child's wellbeing. Moreover, while my colleagues discount the fact that J.P. currently is not at a substantial risk of any harm, much less a speculative harm resulting from the possibility of future parental abuse, neglect, substance abuse, or incapacity because Father's rights have not been terminated, I would find that inquiry to be the most relevant determination.[5] My perspective is comparable to the position the dissent articulated in **Martinez**, *i.e.*, "because the child was

_____

[5] In this vein, the majority's preoccupation with Father's retention of his parental rights is misplaced. As a dependency-related custody case that pitted family members against a government agency, it was necessary for the **Martinez** Court to consider the potential dispositions available to the juvenile court in the child-welfare proceedings. The countervailing possibilities of either reunification under the Juvenile Act or the termination of parental rights under the Adoption Act were particularly relevant to how the custody case would proceed in family division. However, in a non-dependency custody case between two sets of relatives, like the case at bar, there is no superseding concern regarding the ultimate disposition of the governmental action.

already taken out of the parents' home, the child was no longer at risk." *Martinez*, *supra* at 779 (Joyce, J. dissenting).

Thus, for all of the foregoing reasons, I would affirm the trial court's finding that Appellants failed to establish that they had standing pursuant to 23 Pa.C.S. § 5324(3)(iii)(B). In sum, notwithstanding any of the theoretical harms that may or may not occasion a parent's future actions, I agree with the trial court's finding that J.P. currently is not "substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]" 23 Pa.C.S. § 5324(3)(iii)(B).

However, as I noted at the outset, since I believe that Appellants would have standing to pursue any form of physical custody or legal custody of J.P. under the recently enacted § 5324(4) effective, July 3, 2018, I agree with the result reached in this case. As revised to include an additional ground for standing in custody disputes between third parties, § 5324(4) now extends standing to:

> (4) Subject to paragraph (5) [which applies to children involved in dependency proceedings], an individual who establishes by clear and convincing evidence all of the following:
>
>   (i) The individual has assumed or is willing to assume responsibility for the child.
>
>   (ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

- 12 -

(iii) Neither parent has any form of care and control of the child.

23 Pa.C.S. § 5324(4).

By invoking the requirement that a third party demonstrate "a sustained, substantial and sincere interest in the welfare of the child," § 5324(4)(ii) effectively codified our holding in **Kellogg**, **supra**, a case of first impression that addressed "the requirements for standing of a non-custodial third party vis-a-vis other third parties who have legal and physical custody of the children." **Id**. at 584.

In **Kellogg**, we were tasked with determining whether Debra Kellogg, a deceased father's first wife, had standing to pursue custody of the two young sons he had with his second wife, who had been sentenced to twenty-five years to life imprisonment for her role in the father's murder. The children, then ages four and five, spent significant time with their older half-siblings from the father's prior union with Debra. Following her arrest, the second wife agreed to award physical and legal custody of the children to her mother and stepfather, the Francises. Thereafter, Debra filed a custody complaint against the Francises seeking custody of the two young children. The trial court awarded Debra visitation, which the current law refers to as partial physical custody.

On appeal, we upheld the trial court's implicit determination that Debra had standing to pursue custody against the Francises. In light of the dearth of applicable precedent at that stage of our jurisprudence, we fashioned a test that required third parties seeking standing in a custody action against a non-

parent to "prove by clear and convincing evidence that he or she has shown a sustained, substantial and sincere interest in the welfare of the child." *Id*. at 588. Ultimately, we held that Debra had standing based upon the "clear and convincing evidence that she has always shown and continues to show a genuine interest in the welfare of these children." *Id*. at 590.

Instantly, while Appellants did not act to alleviate the substantial risk of harm implicated in § 5324(3)(iii)(B), they have always maintained a healthy relationship with J.P., including their supervision of Father's periods of partial physical custody. Indeed, Maternal Great-Grandparents, who exercise legal and physical custody of J.P., concede Appellants' relationship with J.P. and note that Appellants are willing to assume responsibility of their grandson. Hence, although Appellants failed to satisfy the conditions of standing under § 5324(3), the certified record bears out that Appellants have standing pursuant to § 5324(4).

Thus, in light of the new provisions of the Child Custody Law that afford standing to third parties upon clear and convincing evidence of sustained, substantial and sincere interest in the welfare of the child where, as here, a third party is currently exercising primary custody, Appellants would have standing to pursue any form of physical custody or legal custody of J.P. at this juncture pursuant to § 5324(4). Hence, notwithstanding my disagreement with the learned majority's interpretation of the "substantially at risk" condition outlined in § 5324(3)(iii)(B), I concur in the result of the decision to reverse the trial court order dismissing Appellants' petition to intervene.