J-S13045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.L.F., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| T.L.F., P.H., | : | |
| | : | |
| Appellees | : | No. 1691 WDA 2018 |

Appeal from the Order Entered November 5, 2018
in the Court of Common Pleas of Butler County
Civil Division at No(s): F.C. NO. 17-90320-C2

BEFORE: BENDER, P.J.E., OTT, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED MAY 17, 2019**

T.L.F. (Paternal Grandmother) appeals from the November 5, 2018 order, dismissing her complaint for custody of her minor grandson, J.M.F. (Child), on the basis that she lacked standing. We reverse and remand for further proceedings.

Child was born in March 2017 to Paternal Grandmother's son, T.L.F. (Father), and P.H. (Mother). Although the details are not entirely clear from the record, Mother and Father commenced a custody case shortly after Child's birth, resulting in an order of court dated July 13, 2017. N.T., 11/2/2018, at 32. The order awarded the parents shared legal and physical custody of Child, based on a "2-2-3" schedule.[1] *Id.* At that time, and for the majority of this

_____

[1] The 2-2-3 day schedule imposed by the trial court meant the parties continually alternated days in two and three day increments. For example, Father would have custody on Monday and Tuesday, Mother would have

_____

\* Retired Senior Judge assigned to the Superior Court.

case, Father resided with Paternal Grandmother, who provided the actual care for Child during Father's periods of custody. *Id.* at 30-33. In September 2017, a dispute arose during which Father and/or Paternal Grandmother refused to return Child to Mother's care. *Id.* at 33-34. On October 6, 2017, Paternal Grandmother, acting pro se, filed a custody complaint, in which she averred that she had been Child's primary caretaker since September 8, 2017, and requested sole legal and physical custody.

The parties participated in a custody conference before a conciliator on October 10, 2017. During the conference, the parties reached an agreement that Mother and Father would exercise shared legal custody of Child and that Father would exercise primary physical custody. The agreement provided that Mother would exercise partial physical custody one day per week, which would increase over time if her boyfriend completed a criminal record/abuse history affidavit, and the affidavit did not reveal any problems. The agreement also provided that Paternal Grandmother's complaint "shall be held in abeyance at this time. The parties acknowledged at the time of the conference that the Paternal Grandmother has contact with the minor child during the Father's custodial time and is the primary caregiver for the child." Agreement, 10/10/2017, at ¶ IX. The trial court entered the agreement as an order on October 13, 2017, and scheduled a review conference before the conciliator.

_____

custody on Wednesday and Thursday, and Father would have custody on Friday through Sunday. Then the following week, Mother would have custody on Monday and Tuesday, Father would have custody on Wednesday and Thursday, and Mother would have custody on Friday through Sunday.

The court modified the order slightly on October 18, 2017. Subsequently, Paternal Grandmother retained counsel, who entered his appearance on her behalf on January 3, 2018.

On January 10, 2018, Mother filed preliminary objections to Paternal Grandmother's complaint, challenging standing. Paternal Grandmother filed an amended complaint on January 16, 2018, requesting primary legal and physical custody of Child and asserting that she possessed standing pursuant to 23 Pa.C.S. § 5324(3)(iii)(B), on the basis that Child was substantially at risk due to abuse, neglect, substance abuse, or incapacity. In support of this assertion, Paternal Grandmother relied on Mother's frequent address changes, her involvement with Butler County Children and Youth Services (CYS), and her allegedly limited parenting abilities. Paternal Grandmother also averred that Father had "admitted in previous proceedings that he is not able to care for [C]hild at this time." Amended Complaint, 1/16/2018, at ¶ 13(c).

The parties participated in a review conference on January 16, 2018, but were unable to reach a new agreement. The trial court entered an order on January 18, 2018, adopting the conciliator's recommendations. The order awarded both parents shared legal custody and awarded Father primary physical custody. The order awarded Mother partial physical custody every Wednesday from 10:00 a.m. until Thursday at 10:00 a.m., and every Friday from 10:00 a.m. until Saturday at 10:00 a.m.

Mother filed preliminary objections to Paternal Grandmother's amended complaint on March 5, 2018, once again challenging Paternal Grandmother's

standing. On March 13, 2018, Mother filed a petition for special relief, in which she averred that Father was allowing Paternal Grandmother to care for Child during his custody time, and that Paternal Grandmother was leaving Child with inappropriate caregivers. The trial court entered a consent order on May 4, 2018, which increased Mother's physical custody of Child. The order awarded custody to Mother from noon every Tuesday until Thursday at 10:00 a.m., and every Friday at 10:00 a.m. until Saturday at 10:00 a.m.

On August 30, 2018, the trial court entered an order indicating that it convened a hearing on Mother's preliminary objections and petition for special relief on August 27, 2018. However, the parties agreed to continue the matter generally until either party filed a motion requesting that the court take further action. On September 14, 2018, Paternal Grandmother filed an emergency motion for civil contempt and sanctions. She averred that Mother was refusing to return Child pursuant to the custody order. The court entered an order that same day directing Mother to return Child to Paternal Grandmother. The order further provided that Mother would exercise only supervised partial physical custody of Child every Tuesday and Friday from 5:00 p.m. until 7:00 p.m.

On October 18, 2018, Paternal Grandmother filed a motion requesting that the trial court conduct a hearing on Mother's challenge to standing. The court conducted a hearing on November 2, 2018, at which Mother and Paternal

Grandmother appeared, but Father did not.[2]  In support of her claim that Child is at substantial risk, Paternal Grandmother testified that Mother had changed residences repeatedly during the year and a half since Child's birth, including incidents during which she "became homeless at different times, [and had] been kicked out."  N.T., 11/2/2018, at 9.  Mother's current residence was her fifth during that time.  *Id.* at 9-13.  Mother resided in DuBois, Pennsylvania, in the home of the mother of her boyfriend, T.L.  *Id.* at 13.  Paternal Grandmother reported that CYS had been involved with Mother due to her lack of stable housing as recently as July 2018.[3]  *Id.* at 18-19.

Paternal Grandmother further testified that Mother had a warrant out for her arrest and that T.L. had two warrants out for his arrest.  *Id.* at 14.  She explained that both Mother and T.L. had warrants due to "a break in at their previous address" and that T.L.'s second warrant was due to "a hit and

---

[2] In a consent order entered October 19, 2018, the trial court indicated that it would conduct a hearing on both standing and Paternal Grandmother's request for a finding of contempt.  At the start of the hearing, the parties agreed to limit the proceeding to standing only.  N.T., 11/2/2018, at 4-6.

[3] Paternal Grandmother indicated that Child was "extremely underweight" when he was a few months old.  N.T., 11/2/2018, at 17.  Mother addressed Child's weight with a feeding plan, but continued to "always worry about him being overweight."  *Id.*  Paternal Grandmother further suggested, without providing supporting details, that Mother was neglecting Child, based on the "condition that he was in" when he would return from Mother's care.  *Id.* at 36-37.

run with [Mother] and [Child] in the vehicle."[4]  *Id.*  She presented the trial court with criminal docket sheets in support of these allegations.[5]  *Id.* at 15.

Finally, Paternal Grandmother expressed concern that Mother engaged in illegal drug use.  Paternal Grandmother explained that she visited one of Mother's previous residences around the time when Mother was moving out. *Id.* at 19-20, 23.  There, in an alleyway outside Mother's door, she observed "needles" and "a crack pipe" lying adjacent to a stroller and bags of children's clothes.  *Id.* at 19-20.  She explained, "when I say an alleyway, there is, like, this little entrance, and then you walk down two steps into her door."  *Id.* at 21.  Paternal Grandmother added that the items appeared "[f]ive steps" from Mother's door in total and that the area was not accessible to other apartments but "led into the basement where she was living."  *Id.* at 22.  She presented pictures to the trial court, purporting to show these items.  *Id.* at 21-22.

The trial court then heard the testimony of Mother.  Mother testified that she changed residences frequently for a variety of reasons, including moving closer to her job.  *Id.* at 41-43.  She stated that she left her previous residence

_____

[4] Paternal Grandmother stated that she learned Mother and Child were in the vehicle because "[t]he person that they actually hit was very close friends with somebody I know who had told me."  N.T., 11/2/2018, at 17.  Mother's counsel did not object to this testimony.  Paternal Grandmother's counsel indicated that T.L. actually "has gotten two bench warrants from this court for failure to appear on his hit-and-run case.  And so those are still outstanding."  *Id.* at 16.  Mother denied that she was in the vehicle when the accident occurred. *Id*. at 48.

[5] None of Paternal Grandmother's exhibits is present in the certified record.

in Butler and moved to DuBois because a young child in Butler died recently due to abuse and it was "just not a place for me and my kids. I needed a better start." *Id.* at 43. Later, Mother testified that she moved so frequently because "I always felt like [Paternal Grandmother] was watching me, every move that I was making." *Id.* at 53. Mother conceded that her landlord had been attempting to evict her prior to her move to DuBois, but stated that the landlord's case was dismissed. *Id.* at 56-57. She claimed that she had until August 30, 2018, to leave her prior residence and that she completed her move to DuBois in advance of that date. *Id.* at 45, 57. However, when she returned to her prior residence on August 23, 2018, to retrieve some of her remaining belongings, she discovered that her landlord had locked her out. *Id.* at 44-47, 57. She then forced her way back into the residence, resulting in criminal charges and the warrant for her arrest. *Id.* at 47-48, 58. Mother explained that she knew about the warrant but had not yet done anything to address it, "[f]or one, because I didn't want to lose my job. And two, I have a baby to take care of." *Id.* at 48.

Additionally, Mother denied that any of the items appearing in Paternal Grandmother's photographs belonged to her, although she acknowledged that the photographs depicted the alleyway outside of her prior residence. *Id.* at 46. Mother indicated that there was another door approximately ten feet from the door of her prior residence, but she did not know where the door led. *Id.* at 46-47. Mother further denied knowing that T.L. had warrants out for his

arrest. *Id.* at 48. She asserted that she "looked into" T.L. at the start of their relationship, but that she was unaware of the warrants because they had been together for a year and "I don't continue checking up on him." *Id.* at 51-52.

On November 5, 2018, the trial court entered the order complained of on appeal, sustaining Mother's preliminary objections and dismissing Paternal Grandmother's complaint. The court issued an opinion, in which it explained its conclusion that Paternal Grandmother had failed to prove that Child was substantially at risk due to abuse, neglect, substance abuse, or incapacity, pursuant to 23 Pa.C.S. § 5324(3)(iii)(B). The court reasoned as follows.

> At the hearing, Paternal Grandmother expressed a number of concerns, primarily based on frequent changes of address by Mother and the issuance some weeks ago of a bench warrant for [M]other's arrest for failure to appear at a preliminary hearing; she has apparently been charged with criminal trespass by her former landlord.
>
> Suffice it to say, that mere concerns do not prove a substantial risk. Paternal Grandmother has failed to carry her burden of proof.

Trial Court Opinion, 11/5/2018, at 2 (unnumbered pages) (footnote omitted).

Paternal Grandmother timely filed a notice of appeal on November 30, 2018, along with a concise statement of errors complained of on appeal. She now raises the following claim. "Whether the trial court committed an abuse of discretion and/or an error of law in dismissing Paternal Grandmother's complaint by concluding that Child was not substantially at risk due to parental

abuse, neglect, drug or alcohol abuse[,] or incapacity pursuant to 23 Pa.C.S. § 5324(3)(iii)(B)?"[6]  Paternal Grandmother's Brief at 4.

Because issues of standing and statutory interpretation are questions of law, we adhere to a *de novo* standard of review and plenary scope of review.[7] ***G.A.P. v. J.M.W.***, 194 A.3d 614, 616 (Pa. Super. 2018).

Our courts have emphasized the constitutional significance of standing in child custody disputes.  "'[T]he right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause' of the Fourteenth Amendment."  ***K.W. v. S.L.***, 157 A.3d 498, 502-03 (Pa. Super. 2017) (quoting ***Hiller v. Fausey***, 904 A.2d 875, 885 (Pa. 2006)).  Accordingly, "our law presumes that parents are fit and make decisions in their children's best interest, 'absent factors such as abuse, neglect, or abandonment.'"  ***Id.*** at 503 (quoting ***D.P. v. G.J.P.***, 146 A.3d 204, 214 (Pa. 2016)).

On appeal, Paternal Grandmother asserts that she has standing pursuant to subsection 5324(3)(iii)(B) of our child custody statute, which provides as follows.

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:

---

[6] Neither Mother nor Father has filed a brief on appeal.

[7] While this Court has stated that issues of standing are questions of law, we have also acknowledged that standing often turns on factual determinations. ***C.G. v. J.H.***, 172 A.3d 43, 54 (Pa. Super. 2017).

***

(3) A grandparent of the child who is not *in loco parentis* to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

***

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]

***

23 Pa.C.S. § 5324(3)(iii)(B).

Paternal Grandmother notes that little case law exists clarifying how courts should define "substantial risk." Paternal Grandmother's Brief at 12-13. Therefore, she directs our attention to various dependency cases, finding relevant a parent's history of unstable housing, criminal activity, and drug use. *Id.* at 13-14. She asserts that all three of these circumstances applied to Mother. *Id.* at 14-16. Paternal Grandmother also asserts that CYS had been investigating Mother and that Mother remained in a relationship with T.L., who himself was involved in serious criminal activity. *Id.* at 15-16. She observes that the court failed to discuss Mother's involvement with CYS, her possible

drug use, and her relationship with T.L., which shows that the court's findings and conclusions were unreasonable and deficient. *Id.* at 17.

After careful review, we agree with Paternal Grandmother and conclude that the trial court erred by finding that she lacks standing to seek custody of Child.[8] At the outset, the court failed to acknowledge in its analysis compelling and uncontroverted evidence that Child was at risk of abuse or neglect. In its opinion, the court acknowledged only that Paternal Grandmother had concerns regarding Mother's frequent address changes and the warrant pending for her arrest. The court failed to consider the presence of drug paraphernalia only a few feet away from the door of Mother's previous residence. In addition, the court failed to consider Paternal Grandmother's testimony that T.L. had two warrants out for his arrest, including one warrant resulting from a hit-and-run accident that occurred while Mother and Child were in the vehicle. Troublingly, Mother maintained that she was unaware of these warrants because she no longer "check[s] up on" T.L.'s behavior. *See In the Interest of H.K.*, 172 A.3d 71, 80 (Pa. Super. 2017) (observing that trial court may not engage in the capricious disregard of competent and credible evidence).

---

[8] We focus our analysis on the third prong of subsection 5324(3), as it is clear that Paternal Grandmother met her burden of proof as to the first and second prongs. She began her relationship with Child with Father's consent, and has assumed, and is willing to assume, responsibility for Child. *See* 23 Pa.C.S. § 5324(3)(i)-(ii).

We further observe that, by dismissing Paternal Grandmother's evidence of Mother's conduct as "mere concerns," the trial court appears to have misunderstood the requirements of subsection 5324(3)(iii)(B). Our child custody statute did not require Paternal Grandmother to prove that Child was experiencing current abuse or neglect. Rather, it required only that Paternal Grandmother prove Child was "substantially at risk" of experiencing abuse or neglect. Given Mother's transient housing, criminal charges and outstanding warrant, the presence of drug paraphernalia immediately outside her prior residence next to a child's belongings, and her relationship with T.L., who had his own pending legal troubles, Paternal Grandmother succeeded in proving the existence of substantial risk.[9]

Based on the foregoing, we reverse the trial court's November 5, 2018 order, dismissing Paternal Grandmother's complaint for lack of standing, and we remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[9] In reaching this conclusion, we note that our holding does not require the trial court to award custody of Child to Paternal Grandmother. We conclude merely that the court must provide Paternal Grandmother with the opportunity to prove that an award of custody to her would be in Child's best interest. *See* 23 Pa.C.S. § 5327(b) ("In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/17/2019</u>