J-A11013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.L.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.T.B. | : | |
| | : | |
| | : | No. 2036 MDA 2018 |
| v. | : | |
| | : | |
| | : | |
| T.D.L. & J.L.L. | : | |
| | : | |
| | : | |
| APPEAL OF: C.T.B. | : | |

Appeal from the Order Entered November 7, 2018
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2014-3340

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:            **FILED: AUGUST 22, 2019**

C.T.B. ("Mother") appeals from the November 7, 2018 custody order awarding T.D.L. and J.L.L. ("Paternal Grandparents") legal custody and Mother and C.L.D. ("Father") shared physical custody of their then-four-year-old daughter, W.G.B.  We affirm.

Mother and Father never married, and they terminated their year-long relationship approximately six months after W.G.B.'s birth in March 2014.  The child resided with Mother throughout that six-month period, either as an intact family with Father or with the maternal grandparents.  On September 16, 2014, Father filed a complaint for custody seeking physical and legal custody

of W.G.B. The trial court entered an interim custody order that maintained shared legal custody and awarded shared physical custody on an alternating weekly basis. Other than modifications to create a holiday schedule and provide the out-of-custody parent periods of physical custody during his or her off week, the arrangement remained unchanged for approximately two and one-half years.

On May 9, 2017, in response to Mother's allegations that Father perpetrated abuse against W.G.B., Mother obtained primary physical custody and Father was limited to periods of supervised visitation. The parties maintained shared legal custody. The court ordered both parties to undergo parental fitness evaluations and to exchange reports prior to the custody conciliation conference. Father completed his evaluation within three weeks, and upon a finding by Franklin County Children and Youth Services ("CYS") that the abuse allegations were unfounded, on June 20, 2017, the trial court resumed the alternating weekly periods of shared physical custody.

On October 5, 2017, Mother filed another petition for special relief, this time seeking to suspend Father's periods of unsupervised physical custody due to Father's cognitive limitations, which were outlined in the parenting evaluation. The trial court immediately entered an interim order awarding Mother sole legal custody and primary physical custody pending Father's verified answer to the petition and an evidentiary hearing. The court also ordered CYS to submit a report and case file regarding W.G.B. for its *in camera* review.

While the hearing on Mother's pending motion for special relief was pending, Paternal Grandparents initiated a parallel custody proceeding by filing at a separate docket number a custody complaint and a petition for special relief invoking Mother's neglect and Father's incapacity as a basis to seek primary physical custody and shared legal custody of W.G.B. Until that juncture, Paternal Grandparents' involvement in the underlying custody dispute included, *inter alia*, supervising Father's periods of partial custody and acting as Father's proxy during the custody exchanges. Mother filed preliminary objections to Paternal Grandparents' complaint and petition for special relief, which the court sustained, dismissed the superfluous custody case, treated the complaint as a petition to intervene in the instant action, and scheduled a hearing on the proposed intervention and petition for special relief.

On January 17, 2018, the trial court granted Paternal Grandparents' petition to intervene on an interim basis, "as the [c]ourt [found] that the intervenors have standing to intervene." Trial Court Order, 1/17/18, at 1. Also on an interim basis, the court awarded shared legal custody among all four parties, and allocated shared physical custody between Paternal Grandparents and Mother. *Id*. at 2. Father was granted periods of supervised physical custody. *Id*.

Thereafter, on January 29, 2018, the trial court granted the petition to intervene "based on the agreement" among the parties and maintained the interim custody arrangement outlined in the prior order. Trial Court Order,

1/29/18, at 1. Significantly, as it relates to Mother's complaints on appeal, the agreement was set forth on the record and acknowledged by each of the parties under oath. *See* N.T., 1/29/18, at 3-6.

The three-day custody trial occurred on September 21, 26, and 28, 2018. At the close of evidence, the trial court rescinded the portion of the prior orders that required supervision of Father's periods of physical custody. Later, on November 7, 2018, following the consideration of the parties' post-hearing briefs, the trial court entered a final custody order awarding sole legal custody to Paternal Grandparents, and awarding Mother and Father shared physical custody on an alternating weekly period similar to the prior existing custody arrangements.

Thereafter, within thirty days of the November 7, 2018 order, the trial court granted, in part, Mother's motion for reconsideration insofar as the court amended the custody order to clarify that Mother and Father are authorized to access school and medical records and permitted to participate in academic activities and medical appointments where the practitioner deems their attendance helpful. This timely appeal followed, wherein Mother complied with Pa.R.A.P. 1925(a)(2)(i) by contemporaneously filing a concise statement of errors complained of on appeal.

Mother presents two issues for our review:

I.    Whether the trial court abused its discretion or committed an error of law when it awarded sole legal custody to non-physical custody third[-]party grandparents where, pursuant to the custody statute at 23 Pa.C.S. § 5324, there is no substantial risk, the circumstances do not exist for them to be granted any form of

physical or legal custody, there is an absurd, unreasonable and unworkable result, and natural parents have substantial form of care and control.

I[I]. Whether the trial court abused its discretion or committed an error of law by granting Father shared [physical] custody but essentially permitting him to delegate the majority of his custody rights to his parents who do not meet the requirements to be granted partial custody.

Mother's brief at 9.

Our standard of review is well-settled.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

The first argument that Mother levels on appeal challenges Paternal Grandparents' standing to intervene in the custody litigation. Reducing to a mere inconvenience the fact that she expressly acceded to Paternal Grandparent's intervention under oath, Mother now dedicates twenty pages of argument to challenging it. The crux of her positon is that, because she could not appeal the trial court's initial, interim grant of intervention, she is not precluded from assailing that decision herein. While we agree that Mother

could not appeal the interim order granting standing to intervene in the custody dispute, this argument misses the mark because Mother subsequently acceded to Paternal Grandparents' participation.  Thus, it is not a question of waiver but the reality of the January 29, 2018 accord that defeats Mother's current challenge.

In attempting to diminish this truth, Mother argues that her agreement to intervention was "interim in nature" in that she would have the subsequent opportunity to contest it.  Mother's brief at 28.  That argument fails for one simple reason.  Nothing in the certified record supports her claim that her consent to Paternal Grandparents' intervention was temporary.  Throughout the litigation, the trial court was careful to identify its non-final orders as temporary or interim, and it expressly identified the temporary aspects of the January 29, 2018 order as interim.  However, the portion of the January 29, 2018 order that notes Mother's assent to intervention had no such designation.  Indeed, the certified record, which includes Mother's sworn acquiescence, belies her contention that her assent was temporary or qualified.  As outlined on the record prior to Mother's approval, the Court stated, "So the terms of the agreement are as follows: . . . the motion for trial is continued generally; . . . **the petition to intervene is granted**; that the petition for special relief on behalf of [Paternal Grandparents] is granted in part on an interim basis; [and the] interim temporary custody will be as follows: . . ." N.T., 1/29/18, at 3-4 (emphasis added).  Thus, while the court

- 6 -

specifically identified the interim nature of the partial grant of special relief and the custody arrangement, it declined to qualify Mother's express assent in a similar manner. Hence, the record belies Mother's assertion to the contrary.

Moreover, Mother's foundational premise is illogical. The crux of her assertion is that her assent to Paternal Grandparents' intervention did not preclude her from challenging it later. However, if Mother sought to challenge a third-parties' intervention, she certainly was not required to accede to intervention in order to contest it. Mother's current argument equates the custody trial with an intervention hearing to determine Grandparents' standing. In actuality, however, the trial court's January 29, 2018 order disposed of that issue conclusively, alleviated the necessity for an intervention hearing, and continued the custody trial generally. As Mother's assent did not reserve any objections to Paternal Grandparents' standing she could not level a fresh challenge post-trial.

In addition, we note that Mother's current objection to standing fails on its merits because Paternal Grandparents have standing to pursue any form of physical or legal custody pursuant to 23 Pa.C.S. § 5324(3)(i-iii)(B)[1]. That

---

[1] In pertinent part, § 5324 of the Child Custody Law extends standing to pursue any form of physical or legal custody to:

(3) A grandparent of the child who is not in loco parentis to the child:

subsection grants standing to, *inter alia*, grandparents who have a relationship with a child that began with the consent of a parent, are willing to assume responsibility for the child and, as it relates to this case, "the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]" 23 Pa.C.S. § 5324(3)(iii)(B). While Mother challenges the trial court's finding that W.G.B. would be substantially at risk of parental neglect or incapacity without Paternal Grandparents' intervention, both the certified record and our case law support that determination. Mother contends that the child is not substantially at risk because she maintains shared physical custody and that her alleged parenting deficiencies do not raise to an actual risk. She asserts, "[t]he basis upon which the trial court granted standing fails to reach the level of parental behavior that equates to substantial risk." Mother's brief at 42. We disagree.

---

       (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

       (ii) who assumes or is willing to assume responsibility for the child; and

       (iii) when one of the following conditions is met:

       . . . .

         (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]

23 Pa.C.S. § 5324.

In **In G.A.P. v. J.M.W.**, 194 A.3d 614 (Pa.Super. 2018), this Court rejected the idea that the statute requires a specific articulable risk of harm. We stated, "Simply, the plain language of the statute confers standing to grandparents when a child is substantially at risk due to ongoing parental behaviors." **Id**. at 618. Instantly, the certified record is replete with references to parental behaviors, deficiencies in the parental fitness of Mother and Father, and the effects of those behaviors and deficiencies upon W.G.B. Thus, assuming *arguendo* that we would address the issue of standing notwithstanding the parties' agreement to permit Paternal Grandparents' participation in the custody litigation, Mother's claim fails.

The second component of Mother's first issue purports to challenge the merits of the trial court's award of sole legal custody to Paternal Grandparents. She argues that awarding legal custody to a third-party who does not also exercise physical custody "conjures an absurd result that is unreasonable and unworkable." Mother's brief at 47. In support of her argument, Mother assails the trial court's factual findings concerning her lack of candor with the court, and the delay she experienced in acquiring services for her daughter's special needs. **Id**. at 47-48. In addition, she levels a series of accusations that Paternal Grandparents wield their authority unjustly.[2] To the extent that

---

[2] Mother complains that Paternal Grandparents continue to withhold access to information to which she is entitled and erect barriers to her participation in W.G.B.'s mental health treatment. **See** Mother's brief at 48-50. Clearly,

Mother challenges the substance of the court's custody decision, the record supports the trial court's best-interest determination.

Pursuant to 23 Pa.C.S. § 5328(a), relating to an award of any form of custody, the determination of a child's best interest requires the examination of the following factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.

_____

by awarding sole legal custody to Paternal Grandparents, the trial court placed its faith in Paternal Grandparents to remain objective despite their historical view of Mother's parenting skills and decision-making as deficient. If Mother's accusations were to be established as fact, it would raise a legitimate concern that Paternal Grandparents are not interested in exercising their new-found authority evenhandedly. While these still-unproven assertions are insufficient for this Court to disturb the trial court's best-interest analysis in light of the deference we provide the trial court under our standard of review, which Mother does not challenge, we highlight that Mother is not powerless against the alleged misconduct. Custody orders are subject to modification, and where warranted, Mother can file a motion for contempt or a petition for special relief.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328.

It is within the trial court's purview as the finder of fact to determine which enumerated best-interest factors are most salient and critical in each particular child custody case. *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa.Super. 2013). Herein, the trial court weighed the applicable custody factors in

awarding Mother and Father shared physical custody and granting Paternal Grandparents sole legal custody. As it relates to the determination of legal custody, the trial court focused on the factors that addressed stability and the performance of parental duties. In this vein, it found that factors three, four, ten, thirteen, and sixteen militated to varying degrees in favor of Parental Grandparents, with the considerations concerning W.G.B.'s special needs and the level of conflict between the parties weighing heavily in their favor. Factor one favored Father, and the remaining considerations were either inapplicable or did not inure to either parent's advantage. None of the factors entirely favored Mother, whom the court found demonstrated a lack of initiative in obtaining the necessary treatment and counseling for W.G.B.

As to the catchall considerations that are subsumed by factor sixteen, the court reviewed its decision against the four traditional factors that our case law incorporated into the determination of shared legal custody prior to the enactment of the current statutory scheme. While the court was not obligated to incorporate these factors into its best-interest analysis, having reviewed the substantive factors outlined in § 5328(a)(1)-(a)(15), it was free to supplant that analysis by referencing preexisting case law. **_See e.g._**, **_M.J.M._**, **_supra_** at 339 ("[T]o the extent the trial court finds it necessary to explicitly consider [a judicially-created doctrine], it is free to do so under subsection (a)(16).").

As we stated in **Yates v. Yates**, 963 A.2d 535, 542 (Pa.Super.2008), four factors exist in the determination of whether to award shared custody: "(1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether [they] evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible." **See also M.A.T. v. G.S.T.**, 989 A.2d 11, 22 (Pa.Super. 2010) (*en banc*) (same).

Herein, the trial court found that the factors militated in favor of awarding sole legal custody to Parental Grandparents. Specifically, focusing on the first and final prongs, it determined that neither Mother nor Father is capable of making child rearing decisions independently and the parties' mutual enmity and substandard communication makes shared legal custody impossible. The court deemed the second and third considerations neutral and inapplicable, respectively.

Essentially, Mother maintains that the trial court either ignored certain evidence or failed to view the evidence in a more favorable light. This positon misinterprets our standard of review and ignores our deference for the trial court's role as fact finder. Mother cannot dictate the weight the trial court attributes to any group of factors. Indeed, as we highlighted in **M.J.M.**, **supra**

at 339, "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."

Accordingly, we find that the trial court did not abuse its discretion or commit legal error by awarding sole legal custody to Paternal Grandparents. The court considered all of the relevant statutory factors and rendered its decision accordingly. As the certified record supports the court's determination, we will not disturb it.

Mother styles her final issue as a challenge to the trial court's *de facto* award of partial physical custody to Paternal Grandparents. While the trial court awarded equal physical custody to Mother and Father on an alternating weekly basis, it expressly permitted Father to share his custodial periods with Paternal Grandparents upon agreement. Leveling what amounts to yet another standing challenge, Mother asserts that this provision of the custody order is an end-run around the standing requirements outlined in § 5325, which outlines the circumstances that grandparents and great-grandparents have standing to initiate actions for partial physical custody. Essentially, Mother contends that "by permitting Father to delegate his periods of custody to a third party over a natural parent[,]" the trial court effectively awarded custody to Paternal Grandparents in contravention of § 5325. We disagree.

Unfortunately for Mother, this argument fails for the same reason we rejected her prior standing-based challenge to the custody determination: Mother's express consent to Parental Grandparents' intervention in this case

belies the instant assertion that their participation was improper. Furthermore, even if the agreement did not preclude Mother's current challenge, we previously explained that Paternal Grandparents have standing to seek "any form of physical custody or legal custody" pursuant to subsection 5324(3)(i-iii)(B). 23 Pa.C.S. § 5324. No relief is due.

To the extent that Mother challenges the merits of the trial court's decision to permit Father to delegate portions of his custodial periods to his parents, no relief is due. As we outlined *supra*, the trial court considered all of the relevant best-interest factors and fashioned a custody order to serve those interests, including maintaining W.G.B.'s relationship with Paternal Grandparents and permitting Father to delegate portions of his custodial periods when he is unable to care for his daughter independently. We do not discern an abuse of discretion in the court's decision to fashion a custody order that accounts for an expected scenario.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2019

- 15 -