J-A29025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THOMAS M. HOOVER, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES AND KIM LEWIS | : | |
| | : | |
| | : | No. 812 WDA 2023 |
| v. | : | |
| | : | |
| | : | |
| LISA K. COHEN | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered June 7, 2023
In the Court of Common Pleas of Blair County Civil Division at No(s):
No. 2011  254

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

DISSENTING MEMORANDUM BY BOWES, J.:          **FILED: APRIL 26, 2024**

I agree with my esteemed colleagues' sentiments concerning the three-year delay in resolving the child custody dispute between Mother, Father, Maternal Grandparents, and Paternal Grandmother.  As the majority accurately states, "[t]he delays in this case have been unconscionable." Majority Memorandum at 25.  However, for the reasons discussed *infra*, I disagree with the majority's finding that Maternal Grandparents lacked standing to pursue anything beyond periods of partial physical custody of their thirteen-year-old grandson, A.J.L., with whom Maternal Grandparents have maintained an exceptionally close relationship since his birth in 2010.  Thus, I respectfully dissent from the decision to reverse the custody order awarding

Maternal Grandparents shared legal custody and primary physical custody of the child and remand for additional proceedings.

As the issue regarding standing pursuant to the relevant provisions of the Child Custody Act is a question of law, we review the trial court's decision *de novo*, and our scope of review is plenary. ***G.A.P. v. J.M.W.***, 194 A.3d 614, 616 (Pa. Super. 2018). The majority determined that Maternal Grandparents' July 2020 petition to intervene in the custody dispute between Mother and Father involving A.J.L., which specifically requested "temporary physical custody or periods of physical custody with shared legal custody," was insufficient to satisfy the six-month period of commencement outlined in 23 Pa.C.S. § 5324(3)(iii)(C), relating to standing for any form of physical custody or legal custody.[1] Petition to Intervene/Emergency Custody, 7/9/20, at ¶ 15. According to the majority, that pleading was ineffective to toll the time-

_____

[1] Pursuant to 23 Pa.C.S. 5324(3)(iii)(C), a grandparent who previously lived with the child for at least twelve months may have standing to seek any form of custody under the statute if the custody action is filed within six months of the child's removal from the home. Instantly, Mother and A.J.L. resided with Maternal Grandparents between his birth in January 2010 and May 2020, either inside their residence, or with Stepfather in a mobile home that was placed in Maternal Grandparents' backyard. Even when Mother, Stepfather and A.J.L. stayed in the trailer home, A.J.L. retained his own room in Maternal Grandparents' home. As the majority readily concedes, "Maternal Grandparents were involved in the Child's life on a near-daily basis until 2020." Majority Memorandum at 3. Indeed, Maternal Grandparents sought to intervene in the custody dispute, in part, to safeguard A.J.L.'s mental health, physical health and academic progress. ***See*** Petition to Intervene/Emergency Custody, 7/9/20, at ¶¶ 12-15.

requirements because Maternal Grandparents averred that they stood *in loco parentis* (ostensibly invoking a different basis of standing), the wherefore clause requested "emergency shared legal and physical custody," and during a subsequent video conference Maternal Grandparents indicated that they were seeking partial custody. Majority Memorandum at 19. My learned colleagues then reasoned that Maternal Grandparents subsequently abandoned the petition to intervene when, ten months later, they filed a complaint for custody that specifically invoked § 5324(iii)(C), which the majority reasons was filed six months too late.[2] *Id*. at 18, 19.

Finally, having determined that Maternal Grandparents' 2020 filings were insufficient to toll the time requirements for the above stated reasons, the majority nevertheless declares that its characterizations of those filings are ultimately immaterial to the standing analysis in light of its independent finding that the operative removal of A.J.L. from maternal Grandparents' home had, in fact, occurred in 2015 when Mother and Stepfather took up residence in Maternal Grandparents' backyard. *See* Majority Memorandum at 21-24 (quoting and interpreting testimony about the family's living arrangements after 2015 before concluding that "the Child has not resided with Maternal Grandparents since approximately 2015.").

---

[2] Likewise, the majority discounts as irrelevant Maternal Grandparents' October 2020 motion challenging Appellant's standing to participate in the custody dispute that was the basis of Maternal Grandparents' then-pending July 2020 petition to intervene. Majority Memorandum at 21.

The effect of the majority's exacting review of Maternal Grandparents' 2020 custody filings, independent fact finding, and mechanical application of 23 Pa.C.S. § 5324(3)(iii)(C) is to reverse Maternal Grandparents' award of shared legal custody and primary physical custody and to divest Maternal Grandparents of standing to pursue anything beyond partial physical custody of A.J.L. pursuant to § 5325(1).

However, notwithstanding the majority's scrutiny of the § 5324(3)(iii)(C) time component, as explained *supra*, I believe that Maternal Grandparents established standing to pursue custody of A.J.L. pursuant to § 5324(3)(iii)(B), which does not implicate the six-month period following the child's removal. The relevant portion of § 5324 provides "Standing for any form of physical custody or legal custody" as follows:

> . . . .
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>>
>> (ii) who assumes or is willing to assume responsibility for the child; and
>>
>> (iii) when one of the following conditions is met:
>>
>>> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity;

23 Pa.C.S. § 5324(3) (i-iii)(B).

Maternal Grandparents argue, and I agree, that they have standing to pursue custody pursuant to § 5324(3)(iii)(B), which grants standing to a grandparent if the child is substantially at risk due to abuse, neglect, drug abuse or incapacity. The majority summarily rejects this argument because the trial court did not invoke it as grounds to award standing and because Father's reliance upon Paternal Grandmother's *de facto* parenting shielded him from allegations of neglect or incapacity. It reasons, "Although Father has allowed his negative opinion of the judicial system to interfere with his relationship with the Child, his ambivalence[3] does not constitute neglect, because the Child was never put at risk. While Father was content to let others raise the Child, he at least ensured the Child's safety." Majority Memorandum at 17-18.

Notwithstanding the majority's contrary conclusion, the record bears out that Father is unconcerned about A.J.L. Father's involvement with his son has been minimal, and despite receiving at least partial physical custody of the child throughout this litigation, he has declined to exercise custody consistently and frequently failed to attend custody exchanges.

---

[3] The majority and trial court both mischaracterize Father as "ambivalent," which Merriam-Webster defines as "having or showing simultaneous and contradictory attitudes or feelings toward something or someone[.]" **See** https://www.merriam-webster.com/dictionary/ambivalent (last visited Apr. 10, 2024). A more precise characterization would be that Father is simply unconcerned about his son. As discussed in the body of this dissenting memorandum, I believe that A.J.L. is substantially at risk due to Father's parental detachment.

Consequently, the 2020 consent order between Mother and Father, which granted Paternal Grandmother shared physical and legal custody, excluded Father from physical custody, except during holidays. Overall, the trial court opined, "Indeed, in some respects it would appear that Father had no relationship with the Child but for the involvement of his parents during their periods of custody." Trial Court Opinion, 6/7/23, numbered at 11. Indeed, Paternal Grandmother is the sole driving force behind this appeal, as Father neither appealed the at-issue custody order nor bothered to file a brief with this Court.

Likewise, insomuch as harm may transcend physical mistreatment, the record also demonstrates that A.J.L.'s mental health and emotional welfare is substantially at risk due to Father's apathy. A.J.L. suffers from depression, endures mental health problems which require medication, and has chronic academic issues that risked him being held back a grade. A.J.L.'s mental health concerns were aggravated by both the death of his mother and this extended custody litigation. Significantly, when the parties met to discuss this reality with the trial court, Father neglected to appear at the status conference. Considering A.J.L.'s mental health problems and emotional struggles and the fact that harm manifests in myriad forms, I reject the majority's foundational premise that Father's delegation of parenting responsibilities to Paternal Grandmother effectively bars Maternal Grandparents from establishing standing under 5324(3)(iii)(B). In fact, I

believe that Father's reliance upon Paternal Grandmother to satisfy his parental obligations in this situation, where he exercises shared legal custody and periods of physical custody independent from Paternal Grandmother, creates, rather than alleviates, the ongoing possibility of a substantial risk to A.J.L. due to Father's neglect or incapacity.

We confronted a similar situation in *G.A.P.*, 194 A.3d at 618, where the trial court sustained maternal great-grandparents' preliminary objection to a paternal grandparent's petition to intervene in a custody dispute pursuant to § 5324(3)(iii)(b). The maternal great-grandparents had exercised primary physical custody of the seven-year-old child and the father had periods of supervised physical custody. Paternal grandparents sought to intervene because both parents had problems with substance abuse, the father a criminal history, and the father had recently relapsed. Maternal great-grandparents filed a preliminary objection asserting that the child was not substantially at risk because they were exercising primary physical custody. The trial court sustained the objection without a hearing.

In reversing the order, this Court extended the concept of substantial risk to include a theoretical future detriment associated with a parent's retention of parental rights and concluded that, because the parental rights of the mother and father had not been terminated, the child remained substantially at risk due to parental behaviors. *Id*. Phrased differently, the *G.A.P.* Court reasoned, "[s]ince parental rights have not been terminated or

relinquished, it is possible for either parent to seek custody of Child. This possibility creates an ongoing risk to Child.").[4]

For the same reasons that we reversed the order denying standing in *G.A.P.*, it is irrelevant, herein, that Father shifted his parental responsibilities to Paternal Grandmother. Regardless of that arrangement, Father has maintained his parental rights, and in fact, was awarded both shared legal custody and periods of physical custody independent from Paternal Grandmother, even if he neglects to exercise those rights. In essence, Father's indifference toward his son places the child substantially at risk. ***See***

_____

[4] As it relates to the interplay between grandparents competing for standing to pursue physical custody in this situation, the ***G.A.P.*** Court reasoned,

> It would most certainly be absurd, unreasonable, and against public interest to create a race to file a custody petition and divest one grandparent of his or her right to custody because another grandparent filed a petition first. Rather, the trial court should have the opportunity to determine which grandparent can best serve the child's needs. The trial court must consider in its analysis many custodial factors, including the impact of moving the child from one grandparent to another one. The trial court, however, should have the opportunity to consider all custodial options for the child and this interpretation of the statute gives the trial court the discretion to place the child with the grandparent best suited to care for the child and does not limit the trial court's decision to the grandparent who filed first.

***G.A.P.*** 194 A.3d at 618-19. Insofar as the majority discounts the value of Maternal Grandparents' July 2020 petition to intervene in the custody dispute between Mother and Father and acknowledges the significance of the subsequent accord between Mother and Father granting Paternal Grandmother shared physical and legal custody less than two weeks later, it is apparent that Paternal Grandmother effectively won the race for custody standing that the ***G.A.P.*** Court sought to avoid.

***G.A.P.*** 194 A.3d at 618; ***Martinez v. Baxter***, 725 A.2d 775 (Pa.Super. 1999) (applying the predecessor to § 5324, and holding, "[w]e will not interpret this statute to deprive grandparents of this privileged status merely because CYS has stepped in before the grandparent has had an opportunity to assert her interest in raising her grandchild").

Thus, for all the foregoing reasons I respectfully dissent. Rather than reverse the custody order and not only strip Maternal Grandparents of shared legal custody and primary physical custody, but also deprive them of standing to seek anything beyond periods of partial physical custody, I would either affirm the custody order based on the existing record or, at least, remand for the trial court to make a factual assessment regarding Maternal Grandparents' standing to proceed under § 5324(3)(iii)(B).