J-S41012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| VAUGHN CHANEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDRA ANDREWS | : | No. 2169 EDA 2025 |

Appeal from the Order Entered July 15, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-14403

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 9, 2026**

Vaughn Chaney ("Father") appeals *pro se* the July 15, 2025 order that, *inter alia*, (1) maintained his awards of sole legal and primary physical custody of his biological daughter, I.L.C., born in September 2020; (2) awarded Alexandra Andrews ("Mother") and Stephanie Suswell ("Maternal Grandmother") (collectively, "Appellees") partial physical custody of I.L.C.; and (3) found Father in contempt. We affirm.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that our disposition in this case was delayed by Father's failure to secure timely inclusion of certain necessary notes of testimony within the certified record. *See* Pa.R.A.P. 1931(a)(2) ("In a children's fast track appeal, the record on appeal, including the transcript and exhibits necessary for the determination of the appeal, shall be transmitted to the appellate court within 30 days after the filing of the notice of appeal."). Once Father complied with our directive, we were able to complete our review and, therefore, do not

*(Footnote Continued Next Page)*

We glean the relevant facts and procedural history of this matter from the certified record. Father and Mother (collectively, "Parents") were briefly involved in a romantic relationship that began sometime in 2020 and ended in June 2021, when I.L.C. was approximately nine months old. On June 30, 2021, Father initiated the instant custody proceeding by filing a complaint in the Montgomery County Court of Common Pleas that requested shared legal and physical custody of I.L.C. On August 11, 2021, the court entered an interim custody order that established shared legal custody, awarded Mother primary physical custody, and granted Father partial physical custody for six hours every weekday and on alternating weekends.

At that time, Father resided in Horsham, Pennsylvania, while Mother lived separately in Willow Grove, Pennsylvania. Since it is relevant to our disposition, we note that there is no dispute that I.L.C. dwelled exclusively in Pennsylvania for the entirety of her life prior to the commencement of these proceedings.

Between August 2021 and February 2022, Parents submitted a number of custody modification and contempt petitions that are not pertinent to the instant appeal. On February 25, 2022, the court entered an opinion and order

_____

dismiss the instant appeal. *See* Pa.R.A.P. 1911(d) ("If the appellant fails to take the action required by these rules and the Pennsylvania Rules of Judicial Administration for the preparation of the transcript, the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal.").

that, among other things, awarded Father primary physical custody. Mother moved to Colorado shortly after the entry of this order. She was granted partial physical custody in the form of weekend visits when she returned to Pennsylvania. Parents also continued to share legal custody of I.L.C.

Between March 2022 and September 2022, Parents each filed new petitions to modify custody, which culminated in the entry of an order that largely maintained the existing custody awards. Parents submitted a third round of modification and contempt petitions between February and August of 2023, which resulted in an interim custody order that, again, predominantly kept the *status quo*. **See** Order – Custody, 9/11/23, at 1-4.

The trial court eventually awarded Father sole legal and primary physical custody of I.L.C. based upon Mother's unexplained failures to appear for two separate custody conferences on December 3, 2023, and January 11, 2024. The order provided that Mother "may have supervised visitation with [I.L.C.] upon Father's agreement and his determination of the date, time, and location of visit." Custody Order, 1/11/24, at ¶ 2. Although the reason for Mother's absences is not clear, we note that as of May 2024, she had "enlisted in the [U.S.] Marine Corps and was stationed" outside of Pennsylvania. **See** Trial Court Opinion, 9/12/25, at 4.

On May 2, 2024, Maternal Grandmother filed a petition to intervene. On October 10, 2024, the court held a hearing and entered an order that granted her standing to seek partial physical custody pursuant to 23 Pa.C.S.

§ 5325(2).[2] **See** Order, 10/10/24, at 1. Additionally, the court awarded Maternal Grandmother partial physical custody of I.L.C. in the form of supervised visits on "alternating Sundays from 1:00 P.M. until 3:00 P.M." **Id**. at ¶ 2. During the hearing, Mother appeared via video from a "training facility" and averred that she would be physically unavailable to exercise custody for the foreseeable future "due to required trainings and placements for her desired military career." **Id**. at ¶ 1 n.1.

Approximately one month after the award of partial physical custody, Maternal Grandmother filed a petition for contempt, alleging that Father was not permitting her to exercise her custodial time with I.L.C. Mother later filed an emergency petition to modify custody seeking partial physical custody of I.L.C. during the periods of regular military leave that she spent in Pennsylvania. On January 9, 2025, Father filed notice of his intent to relocate to Middletown, Delaware. As discussed further below, however, Father had already relocated to Delaware at the time this notification was filed. **See** N.T., 3/26/25, at 164. Thereafter, Maternal Grandmother filed an affidavit opposing Father's relocation.

_____

[2] As will be discussed at length *infra*, § 5325(2) provides that a grandparent has standing to pursue partial physical custody where: (1) their relationship with the child began with the consent of one of the child's parents; (2) the parents have commenced custody litigation; and (3) the parents do not agree whether the grandparent should have custody.

The court held a consolidated hearing on these outstanding custody issues. Amongst others, the court heard testimony from Mother, Maternal Grandmother, and Father. On July 15, 2025, the court filed an order and opinion that, *inter alia*: (1) maintained Father's custody awards of sole legal and primary physical custody; (2) found Father in contempt and ordered him to pay Maternal Grandmother's attorney's fees; (3) permitted Maternal Grandmother to voluntarily withdraw her opposition to Father's relocation to Delaware; (4) re-affirmed Maternal Grandmother's standing and modified her custody award such that she would have partial physical custody of I.L.C. the first weekend of every month from Saturday at 11:00 AM to Sunday at 6:00 P.M.; and (5) granted Mother supervised partial physical custody of I.L.C. on dates and times to be mutually agreed upon with Father. This filing also included a thorough discussion of the court's findings pursuant to the custody factors at 23 Pa.C.S. § 5328(a).

On July 24, 2025, Father filed a *pro se* emergency petition to modify custody alleging that "Maternal Grandmother does not meet the legal criteria for grandparental rights" and that she posed "a serious risk" to I.L.C.'s safety. *See* Emergency Petition to Modify Custody, 7/24/25, at 5. The same day, Father *pro se* filed a special petition, which sought the trial court's recusal based upon alleged judicial bias, transfer of the custody case to Delaware, and suspension of all visitation by Appellees. ***See*** Petition for Special Relief for

Recusal, 7/24/25, at 3-4, 12. The court held a hearing on Father's petitions on August 12, 2025, and, that same day, entered an order denying them.

The next day, Father timely filed a *pro se* notice that purported to appeal the July 15 and August 12, 2025 orders.[3] **See** Notice of Appeal, 8/13/25, at 1. Father did not submit a concise statement of errors as required by Pa.R.A.P. 1925(a)(2)(i).[4] On September 9, 2025, this Court issued a rule to show cause noting that it was "unclear" which order Father intended to appeal. **See** Order, 9/9/25, at 1. Father timely filed a response explaining it was his intent to appeal the July 15, 2025 order. **See** Father's Response to Rule to Show Cause, 9/18/25, at ¶ 1. Meanwhile, the trial court authored its Rule 1925(a)(2)(ii) opinion.

We discern from Father's multi-page statement of questions that he avers the trial court abused its discretion, or legally erred, by: (1) demonstrating bias and refusing to grant Father's request for recusal; (2) retaining jurisdiction of these proceedings in violation of the Uniform Child-

---

[3] Although Father has been sporadically represented by counsel throughout these proceedings, he concomitantly elected to represent himself during substantial periods of time. His most recent attorney of record, Ashley R. Coleman, Esquire, withdrew on June 13, 2025. Father has since represented himself.

[4] As the misstep did not prejudice either party or preclude the trial court from issuing a thorough Rule 1925(a) opinion in response to Father's appeal, we conclude that any error was merely procedural in nature and, therefore, harmless. **See J.M.R. v. J.M.**, 1 A.3d 902, 906 (Pa.Super. 2010); **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa.Super. 2009).

Custody Jurisdiction and Enforcement Act ("UCCJEA"), 42 Pa.C.S. §§ 5401-82; (3) neglecting to consider thirty-two "documents" Father wished to admit into evidence; (4) granting standing to Maternal Grandmother; and (5) awarding Maternal Grandmother partial physical custody.[5]  **See** Father's Brief at 5-15.  We address each claim *seriatim*.

> Our standard and scope of review in this context are well-established:
>
> Our standard of review over a custody order is for a gross abuse of discretion.  Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.
>
> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.

---

[5] We observe that Father's framing of his issues does not adhere to the standards established pursuant to Pa.R.A.P. 2116 insofar as the description of his issues spans several pages and unnecessarily belabors details that should instead appear in the argument portion of his brief.  **See** Father's brief at 5-15 (pagination supplied); *see also* Pa.R.A.P. 2119(a).  Indeed, Father's statement of questions is twice as long as the argument section of his brief.  **Compare** Father's brief at 5-15 **with id**. at 20-26.  We pointedly remind Father that, even acting *pro se*, his brief is required to "conform in all material respects" to the requirements of our Rules of Appellate Procedure.  **See** Pa.R.A.P. 2101.  While it is within this Court's authority to dismiss appeals based upon substantial defects in an appellate brief, we do not dismiss this appeal because Father's drafting errors have not prejudiced our appellate review.  **See Fulano v. Fanjul Corp.**, 236 A.3d 1, 12 (Pa.Super. 2020) (declining to quash appeal pursuant to Rule 2101 where underlying defects did not "substantially" impede this Court's review).

Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up). Moreover it is not our function "to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005) (cleaned up).

Father first argues that the trial court was inappropriately biased against him in these proceedings and, therefore, erred by denying his request for recusal. *See* Father's brief at 19. Specifically, he claims there was a suspicious pattern in this case wherein his attorneys consistently withdrew their appearances immediately after in-chambers conferences with the trial court. *Id*. at 13.

This Court "presumes judges are fair and competent" and, thus, we review a trial court's denial of a motion to recuse for an abuse of discretion. *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa.Super. 2017). Critically,

[i]n this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

*Id*. This principle also applies where litigants only seek recusal after the entry of an adverse judgment. ***See Reilly by Reilly v. Southeastern Pennsylvania Trans. Authority***, 489 A.2d 1291, 1300 (Pa. 1985) ("Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result.").

Father's appeal lies solely from the July 15, 2025 custody order. His submissions in this Court make clear that Father did **not** appeal the final order entered on August 12, 2025 that denied, *inter alia*, his July 24, 2025 recusal motion based upon the above-detailed claims of judicial bias. **See** Father's Response to Rule to Show Cause, 9/18/25, at ¶ 1; Petition for Special Relief for Recusal, 7/24/25, at 3-4; Order, 8/12/25. Our review of the certified record indicates that Father never advanced any colorable claims of judicial bias until **after** the entry of the order appealed from.

Despite his representations to the contrary, it appears that Father is attempting to obtain appellate review of a final order he chose not to appeal, *i.e.*, the August 12, 2025 order.[6] It is well-established that "a single appeal

_____

[6] In general, an order denying a request for recusal is not immediately appealable. ***See Hahalyak v. Integra Financial Corp.***, 678 A.2d 819, 819-20 (Pa.Super. 1996). We note, however, that the court's August 12, 2025 order effectively disposed of all the then-pending issues raised by the parties. As such, this order was an independently final and appealable order. ***See***, ***e.g.***, ***In re Petition to Compel Cooperation with Child Abuse Investigation***, 875 A.2d 365, 369 (Pa.Super. 2005) (citing Pa.R.A.P. 341(a)-
*(Footnote Continued Next Page)*

is incapable of bringing on for review more than one appealable order, judgment or decree." **Somerlot v. Jung**, 343 A.3d 324, 329 (Pa.Super.2025) (cleaned up). To the extent Father continues to advance arguments that arise pursuant to the August 12, 2025 order, we will not address them because that final order is not subject to review in the instant appeal.

Assuming, *arguendo*, that Father's recusal arguments properly relate to the July 15, 2025 order, his allegations of judicial bias would be waived because they were not raised in a timely fashion. Particularly, Father only filed his motion for recusal **after** the court's entry of the July 15, 2025 custody order. Furthermore, the factual basis of Father's allegations of judicial bias were well-known to him for more than a month prior to the entry of an adverse judgment, namely, the serial withdrawals of his prior attorneys of record. **See** *Praecipe* for Withdrawal of Appearance, 6/13/25, at 1 (unpaginated); Motion to Withdraw as Counsel, 2/20/25, at 1-3 (requesting to withdraw due to "lack of payment"); Withdrawal of Appearance, 10/31/24, at 1 (unpaginated).

Based upon Father's knowledge of the purported impediment and his failure to request recusal prior to the entry of the subject judgment, we hold that he has waived his arguments concerning judicial bias arising pursuant to

_____

(b)) ("As there was nothing else pending, the court's order disposed of all claims and of all parties; and therefore, constituted a 'final order' for appeal purposes.").

the July 15, 2025 order. **See Reilly**, 489 A.2d at 1300; **Lomas**, 170 A.3d at 389. No relief is due.

In his second issue, Father asserts that the trial court lacked jurisdiction to issue a custody determination pursuant to the UCCJEA. **See** Father's brief at 25. Specifically, he posits that Delaware is now I.L.C.'s "home state" within the meaning of the UCCJEA, such that the trial court was deprived of jurisdiction. **Id**. (citing 23 Pa.C.S. §§ 5402, 5421). We disagree.

Under the UCCJEA, the term of art "home state" refers to "[t]he state in which a child lived with a parent . . . for at least six months immediately before the commencement of a child custody proceeding." 23 Pa.C.S. § 5402. Father's arguments rely principally upon § 5421, which provides, in pertinent part, that "a court of this Commonwealth has jurisdiction to make an initial custody determination" if Pennsylvania was the child's "home state" on the "date of the commencement of the proceeding[.]" 23 Pa.C.S. § 5421(a)(1). In this context, an "initial determination" is "[t]he first child custody determination concerning a particular child." 23 Pa.C.S. § 5402.

Father's jurisdictional arguments are misplaced. As detailed in the factual and procedural history above, Pennsylvania was I.L.C.'s "home state" for at least six months prior to June 30, 2021, *i.e.*, the date when Father commenced these custody proceedings. **See** Father's Petition for Custody, 6/30/21, at ¶ 4. Thus, the trial court properly exercised jurisdiction and entered an "initial determination" in August 2021 pursuant to § 5421(a)(1) of

the UCCJEA. *See* 23 Pa.C.S. §§ 5402, 5421(a)(1). There is simply no discernible merit to Father's claim that the trial court lacked jurisdiction pursuant to §§ 5402 and 5421 of the UCCJEA.[7]

We now turn to Father's third argument, wherein he alleges that the trial court erred by excluding thirty-two "documentary exhibits," which included "texts, videos, and affidavits documenting [Mother's] unsafe conduct and family concerns." Father's brief at 6, 25. Father's discussion of this issue, however, reveals that his attorney "refused to introduce" these exhibits and "declined" to utilize them at the March 26, 2025 hearing. *Id*. Hence, we discern that the trial court never had an opportunity to rule upon the admissibility of these purported exhibits. Plainly, there is no underlying evidentiary ruling to review since Father never actually sought to admit the complained-of evidence at trial. Accordingly, we conclude that his evidentiary arguments are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

_____

[7] Although Father has declined to present any arguments on this point, we note that a Pennsylvania court that has issued an initial custody determination pursuant to § 5421 "has exclusive, continuing jurisdiction" under the UCCJEA pursuant to § 5422(a). Although there are certain conditions under which a court loses "exclusive, continuing jurisdiction[,]" Father has declined to present any argument on that basis. *Compare* Father's brief at 1-27 *with* 23 Pa.C.S. § 5422(a)(1)-(2). We will not act as Father's counsel to develop arguments on his behalf. *See Commonwealth v. Westlake*, 295 A.3d 1281, 1286 n.8 (Pa.Super. 2023).

Father's fourth claim for relief alleges that the trial court erred in granting Maternal Grandmother standing pursuant to § 5325 ("Standing for partial physical custody and supervised physical custody") of the Child Custody Act.[8]  **See** Father's brief at 5, 18, 20.  He alleges Maternal Grandmother "never acted *in loco parentis*" and "had only sporadic contact" with I.L.C.[9]  **Id**. at 20.  In support, he has cited **D.P. v. G.J.P.**, 146 A.3d 204 (Pa. 2016), which he claims stands for the proposition that "standing requires a substantial, pre-existing relationship."  **Id**.

Our review of questions pertaining to a grandparent's statutory standing to seek custody of their grandchild is subject to a *de novo* standard of review and a plenary scope of review.  **See G.A.P. v. J.M.W.**, 194 A.3d 614, 616

---

[8]  The trial court originally granted Maternal Grandmother's second petition to intervene in its October 10, 2024 custody order.  **See** Order, 10/10/24, at ¶ 1 ("This [c]ourt finds that pursuant to [§] 5325, Maternal Grandmother does have standing . . . in the ongoing custody matter between [Parents].").  Based upon our review of the certified record, however, it is clear that the court revisited the issue of Maternal Grandmother's standing during the March 26, 2025 hearing.  **See** N.T., 3/26/25, at 5 (indicating that the court was adjudicating, *inter alia*, Maternal Grandmother's second petition to intervene).  Ultimately, the court reaffirmed Maternal Grandmother's standing to seek partial physical custody of I.L.C. pursuant to § 5325.  **See** Order, 7/15/25, at ¶ 2 (citing 23 Pa.C.S. § 5325).

[9]  The term "*in loco parentis*" literally means "in place of a parent."  **A.C. v. E.K.**, 331 A.3d 939, 946 (Pa.Super. 2025).  It "refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption."  **Interest of K.N.L.**, 284 A.3d 121, 144 (Pa. 2022).

(Pa.Super. 2018). Specifically, such issues implicate both "threshold" questions of law and issues of statutory interpretation.[10] *Id*.

This Court has further explained: "In child custody cases, the concept of standing is fluid and differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation." *E.A. v. E.C.*, 259 A.3d 497, 501 (Pa.Super. 2021). In addition to "assuring that actions are litigated by appropriate parties," standing principles in the context of child custody are intended "to prevent intrusion into the protected domain **of the family** by those who are merely strangers, however well-meaning." *Id*. (emphasis added). Absent an "applicable statutory exception," third parties generally lack standing to intervene in custody cases. *Id*.

The Child Custody Act "provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." *M.W. v. S.T.*, 196 A.3d 1065, 1069 (Pa.Super. 2018) (cleaned up). Indeed, our Supreme Court has recognized the public policy importance and "potential benefits" of

---

[10] When interpreting a statute, this Court is bound by the rules of the Statutory Construction Act of 1972. *See* 1 Pa.C.S. §§ 1501-1991. Our principal goal in interpreting any Pennsylvania statute is to ascertain and effectuate the intention of the General Assembly while also construing statutory language in a manner that gives effect to all of its provisions. *See* 1 Pa.C.S. § 1921(a). Furthermore, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "the best indication of the General Assembly's intent may be found in a statute's plain language." *G.A.P. v. J.M.W.*, 194 A.3d 614, 617 (Pa.Super. 2018) (cleaned up). We also presume that our General Assembly does not intend results that are "absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

fostering "strong inter-generational ties" between grandparents and grandchildren. ***Hiller v. Fausey***, 904 A.2d 875, 886 (Pa. 2006).

Standing to seek partial physical custody by a grandparent is governed by § 5325, which provides as follows:

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in [§] 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section; or

(3) when the child has, for a period of at least [twelve] consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325. The trial court awarded Maternal Grandmother standing to pursue periods of partial physical custody pursuant to § 5325(2), which involves the following elements: (1) the relationship between the grandparent

- 15 -

and the child began with the consent of at least one parent; (2) the parents of the child have commenced custody proceedings; and (3) the parents of the child disagree as to whether the grandparent should have custody. **See** 23 Pa.C.S § 5325(2).

Father's arguments concerning Maternal Grandmother's standing in this matter are inapposite. To the extent that Father's discussion invokes and focuses upon the doctrine of *in loco parentis*, he has misapprehended the basis of standing pursuant to § 5325. **See** Father's brief at 5, 18, 20. To wit, standing to seek any form of custody based upon an individual's purported *in loco parentis* status arises pursuant to § 5324(2) of the Child Custody Act, which is **not** at issue here. **See** 23 Pa.C.S. § 5324(2); **G.A.P.**, 194 A.3d at 617. This aspect of Father's arguments is simply non-responsive to the relevant legal standard.

Father's reliance upon **D.P.** is also misplaced. As this Court has explained, "[i]n **D.P.**, the [Pennsylvania] Supreme Court struck, as unconstitutional, language found in a **prior version** of [§] 5325(2) that granted grandparents standing to seek custody where the child's parents had been separated for at least six months." **M.S. v. J.D.**, 215 A.3d 595, 600 (Pa.Super. 2019) (emphasis added); **see also D.P.**, 146 A.3d at 215-17. Indeed, at the time our Supreme Court issued **D.P.**, the statutory subsection at issue in this case did not even exist yet. The current version of § 5235(2)

- 16 -

was enacted by our General Assembly in 2018, approximately two years after *D.P.* was issued.

Furthermore, we find no support for Father's bald assertion that *D.P.* established a broad requirement that a grandparent must demonstrate "a substantial, pre-existing relationship" in order to obtain standing to seek custody. *See* Father's brief at 20. Tellingly, he has not provided a specific citation identifying this critical aspect of the holding, and our review has not revealed any such pronouncement in the opinion.

Contrary to Father's arguments, we observe no error of law in the trial court's conclusion that Maternal Grandmother had standing pursuant to § 5325(2). With respect to the first element, Mother's testimony indicated that Maternal Grandmother's relationship with I.L.C. began with Mother's consent on the day that I.L.C. left the hospital following her birth in 2020. *See* N.T., 3/26/25, at 14. Mother further testified that, thereafter, I.L.C. spent significant periods of time living with Maternal Grandmother between 2020 and 2022. *Id*. Mother stated that Maternal Grandmother also interacted with I.L.C. during Mother's periods of physical custody from 2022 through 2025. *Id*. at 16.

Turning to the second statutory prong, it is beyond cavil that Parents have instituted custody proceedings concerning I.L.C. Thus, this requirement is also satisfied. Similarly, it is also clear that the final factor pertaining to parental disagreement has been sufficiently established. Mother testified that

she supported Maternal Grandmother having partial physical custody. *See* N.T., 3/26/25, at 14. Concomitantly, Father opposed Maternal Grandmother's request for partial physical custody. *Id*. at 153-54. Therefore, the disagreement between Parents is evident upon the face of the certified record. Based upon the foregoing, we find no abuse of discretion or error of law in the trial court's findings pursuant to § 5325(2).

Father's fifth and final argument concerns the trial court's findings pursuant to the factors set forth at 23 Pa.C.S. § 5328 ("Factors to consider when awarding custody"). *See* Father's brief at 5, 18, 21-24. Although he has declined to directly attack the court's determination as to any particular subsection of § 5328(a), we gather that his quarrel relates to § 5328(a)(4) based upon his general pronouncement that the trial court failed to prioritize I.L.C.'s "safety, stability, and continuity" in awarding Maternal Grandmother custody. *Id*.; 23 Pa.C.S. § 5328(a)(4) (considering "the need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party").[11]

The court's findings as to this subsection were presented in the following manner:

> Stability and continuity are highly important in a [c]hild's life. On several occasions, this [c]ourt has acknowledged that as between

---

[11] Our General Assembly amended § 5328(a) on June 30, 2025, with the amendments taking effect sixty days later on August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Since these proceedings concluded by the time the amendments took effect, we do not apply them to this case.

Father and Mother, Father has been the consistent [p]arent in [I.L.C.'s] life. He . . . has provided a consistent home for [I.L.C.] for at least the past three years when Mother [was living outside of Pennsylvania].

However, since he has obtained primary physical custody, Father has been resistant to consistently allowing [I.L.C.] to spend time with the [m]aternal side of the family, particularly Maternal Grandmother. Contrary to Father's assertion that [Maternal] Grandmother does not have a relationship with [I.L.C.], the evidence established that [I.L.C.] has spent time with Maternal Grandmother at various times since her birth. Mother and [I.L.C.] lived with Maternal Grandmother for several months in 2021 and 2022. Later, during Mother's custodial time, Maternal Grandmother would spend time with [I.L.C.] Maternal Grandmother would babysit for Mother, and then also went to cookouts, holiday events, and visited with other family members. Maternal Grandmother also testified that she and [I.L.C.] played games, read books and went to the zoo.

As Maternal Grandmother acknowledged, the prolonged time that Father keeps [I.L.C.] away from her has a negative impact on their relationship. Maternal Grandmother testified that she last spent time with [I.L.C.] in late 2023/early 2024. Maternal Grandmother testified that she has a stable home that has space for [I.L.C.] to spend the requested weekend time with her. Maternal Grandmother has experience with children as an educator in the School District of Philadelphia.

It is in [I.L.C.]'s best interest to have a relationship with her [m]aternal family, particularly in Mother's absence. Maternal Grandmother's request to spend time with [I.L.C.] once per month is not unreasonable.

Order and Opinion, 7/15/25, at 16-17.

Our review bears out that the trial court's findings pursuant to § 5328(a)(4) are fully supported by the certified record. As noted above, Mother testified that Maternal Grandmother forged a relationship with I.L.C. while the child was living with her for extended periods of time between 2020

and 2022. *See* N.T., 3/26/25, at 14-17. Mother further indicated that Maternal Grandmother continued to regularly interact with I.L.C. during Mother's periods of partial physical custody from 2022 to 2024. *Id*.

Maternal Grandmother attested along very similar lines. *Id*. at 38-40. Dovetailing with Mother's remembrances, Maternal Grandmother estimated that she had "a good two years" of "childhood experiences" with I.L.C. as a result of their time together. *Id*. at 40. Maternal Grandmother further explained that her interactions with I.L.C. were stopped after Father assumed primary physical custody of the child. *Id*. at 41-43. She averred that the last time she had physical contact with I.L.C. was "very early" in 2024. *Id*. at 45. Thereafter, Maternal Grandmother maintained "sporadic" phone contact with I.L.C. *Id*. at 46. Although she was awarded partial physical custody in the trial court's October 10, 2024 order, she testified that Father never permitted her to actually see I.L.C. *Id*. at 51-56; Order, 10/10/24, at ¶ 2.

Maternal Grandmother also clarified that she was only requesting "one weekend" per month with I.L.C. for the purpose of "relationship[-]building time." N.T., 3/26/25, at 58. Maternal Grandmother confirmed that her residence is a one-bedroom apartment with appropriate "amenities" and easy access to kid-friendly activities. *Id*. at 60-61. She further averred that she would allow I.L.C. to sleep in her room during these visits, while she would sleep in the living room of her apartment. *Id*. at 60.

Based upon the foregoing, we discern no abuse of discretion in the trial court's findings pursuant to § 5328(a)(4).[12] Contrary to Father's arguments, it is clear that the trial court was fully cognizant of I.L.C.'s need for familial stability and continuity when it entered a custody order that, *inter alia*, ensured that the child would continue to have contact with the maternal side of her family while keeping primary physical custody with Father. Finally, to the extent that Father argues that the trial court should have disregarded the testimony presented by Mother and Maternal Grandmother as lacking evidentiary weight, we decline his invitation to overturn the well-supported findings of the trial court. ***See Rogowski***, 291 A.3d at 60-61.

Accordingly, we affirm the July 15, 2025 custody order.

Order affirmed.

_____

[12] Although not explicitly referenced by Father's arguments, we note that 23 Pa.C.S. § 5328(c)(1) provides three additional factors that a court must consider in awarding a grandparent partial physical custody pursuant to pursuant to § 5325(2), namely: (i) the amount of personal contact between the child and the grandparent prior to the filing of the action; (ii) whether the award interferes with any parent-child relationship; and (iii) whether the award is in the best interest of the child. ***See*** 23 Pa.C.S. § 5328(c)(1). While the trial court did not issue explicit findings with respect to these factors, we find that its discussion of § 5328(a)(4) nonetheless covers these elements. Specifically, the court noted that Maternal Grandmother had significant and meaningful contact with I.L.C. prior to the filing of these proceedings. Furthermore, there is no indication that the trial court's modest award of one weekend of partial physical custody every month will interfere with parental custody. Finally, the court emphasized that maintaining contact with the maternal side of her family served I.L.C.'s best interests.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/9/2026</u>