J-S46001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW JARED HOPKINS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RACHEL HOPKINS AND PAUL J. | : | No. 1036 WDA 2025 |
| JOSEPH | : | |

Appeal from the Order Entered July 17, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-25-000269

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: March 3, 2026**

Matthew Jared Hopkins ("Grandfather") appeals *pro se* from the July 17, 2025 order that granted a motion filed by his daughter, Rachel Hopkins ("Mother") and dismissed his custody complaint with respect to Mother's son, S.H., born in June 2024.[1]  We affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  The instant case stems from an acrimonious dispute involving Mother and her immediate family.  During Mother's pregnancy with S.H. and following his birth, several members of Mother's family began living in the Pittsburgh area, which included, *inter alia*, Grandfather and two of

_____

[1]  Although he is listed as a party in this appeal, we also note that S.H.'s biological father, Paul J. Joseph, was "not involved" with S.H. and did not participate in these proceedings.  N.T., 7/8/25, at 5.  Accordingly, we will not discuss him further in this writing.

Mother's sisters: Krista Hopkins and Jessica Hopkins. *See* N.T., 7/8/25, at 84. Grandfather resided in a long-term rental residence, while Krista and Jessica lived in Mother's apartment. For the first six months of S.H.'s life, Mother's sisters played a role in providing day-to-day care for S.H.

By contrast, Grandfather had only sporadic contact with his grandson, which consisted of FaceTime video calls and occasional in-person interactions. *Id*. at 18-19, 82. There is no dispute that he never provided any direct care for S.H. throughout this time period, nor did he spend any time alone with the child. *Id*. at 19-20, 49-50, 97-98.

During this six-month interval, Mother's family grew concerned about her mental health and S.H.'s well-being. In text messages sent to other members of Mother's family, Krista referred to Mother as "unstable" and speculated that she was "autistic" and "bipolar."[2] *Id*. at 56-59. Grandfather similarly claimed that Mother exhibited "bizarre" and "erratic" behaviors, although he offered few concrete examples. *Id*. at 100. He expressed his belief that Mother was suffering from "postpartum depression." *Id*. at 103. Jessica likewise averred that Mother's mental state was "deteriorating." *Id*. at 121. These same family members also opined that S.H. appeared underweight. *Id*. at 60, 88, 123-26. As discussed further *infra*, Mother disputed these allegations at trial.

---

[2] We note that these text messages were obtained from Krista's cell phone by Grandfather without her consent. *See* N.T., 7/8/25, at 52-53.

Between November and December of 2024, Mother ended all contact with Grandfather and Jessica. *Id*. at 103. Jessica responded by submitting a report to the Allegheny County Children & Youth Services ("CYS") raising concerns about S.H.'s welfare. *Id*. at 118-19. Following a home visit and a brief investigation, CYS closed the referral as unfounded. *Id*. at 26-27. In the aftermath of that decision, Grandfather appeared at Mother's apartment and threatened to take S.H. from her on at least two separate occasions. *Id*. at 29-30.

On February 11, 2025, Mother filed a petition for protection from abuse ("PFA") against Grandfather on behalf of herself and S.H. *Id*. at 1-4. The court granted the petition on the same day and entered a temporary PFA order, which excluded Grandfather from Mother's home and prohibited him from contacting Mother or S.H.

On February 18, 2025, Grandfather filed through counsel a custody complaint, which sought primary physical and shared legal custody of S.H. Specifically, he alleged that Mother was suffering from an "untreated mental health diagnosis" such that she "lacks the capacity to properly care for [S.H.], and thus, the [c]hild is substantially at risk." Custody Complaint, 2/18/25, at ¶¶ 18-20. On March 11, 2025, Mother voluntarily withdrew the temporary PFA without prejudice in exchange for Grandfather agreeing to "not stalk, harass, abuse, or threaten" her. *See* PFA Withdrawal Order, 3/11/25, at 1.

The order also required that he continue to refrain from all "contact" with Mother and stay away from her residence. ***Id***.

On March 21, 2025, Mother filed a motion to dismiss the custody complaint, arguing that Grandfather lacked standing. The trial court held a hearing on July 8, 2025, wherein Mother and Grandfather were both represented by counsel. The court heard testimony from, *inter alia*, Mother, Grandfather, Krista, Jessica, and Mother's friend Leah Clemmons, who watched S.H. once a week. On July 17, 2025, the court entered an order granting Mother's motion and dismissing the custody complaint.[3]

On August 13, 2025, Grandfather, acting *pro se*, timely filed a notice of appeal along with a concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i).[4] The trial court filed a responsive Rule 1925(a)(2)(ii) opinion. Grandfather has raised the following issues for our consideration in his *pro se* appellate brief:

> 1. Did the trial court's comments and tone during the July 8, 2025 hearing create an appearance of bias and pre-judgment, violating [Grandfather's] right to a fair and impartial tribunal?

---

[3] Although this order was filed on July 14, 2025, the docket indicates that notice pursuant to Pa.R.Civ.P. 236 was not provided until July 17, 2025.

[4] Until that point, Grandfather had been represented by Anthony Piccirilli, Esquire. Although the certified record does not disclose that Attorney Piccirilli ever formally withdrew from this case, we discern that he ceased representing Grandfather shortly after the conclusion of the July 8 hearing.

2.      Did the trial court's evidentiary restrictions and counsel omissions deprive [Grandfather] of due process and a complete record for review?

3.      Did the trial court err and abuse its discretion by dismissing [Grandfather's] custody complaint for lack of standing under 23 Pa.C.S. § 5324(3) despite record evidence of consent-based caregiving and assumption of parental responsibility?

4.      Did the trial court misapply the standard for evaluating consent and caregiving under **T.B. v. L.R.M.**, 786 A.2d 913 (Pa. 2001), and related precedent?

Grandfather's brief at 7 (issues reordered for ease of disposition).[5]

We begin with the well-established legal principles governing our review

of Grandfather's appeal:

Our standard of review over a custody order is for a gross abuse of discretion.  Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

---

[5]  Although he lists only four issues in his statement pursuant to Pa.R.A.P. 2116 ("Statement of Questions Involved"), we note that Grandfather has included a fifth issue in the argument section of his brief generally challenging the trial court's credibility determinations.  **See** Grandfather's brief at 16-17. Our Rules of Appellate Procedure provided that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."  Pa.R.A.P. 2116(a); **see also** Pa.R.A.P. 2101.  While we cannot countenance Grandfather's disordered brief, we find that this particular issue is fairly suggested by his arguments concerning the trial court's standing ruling.  Despite being poorly framed, this argument goes to the heart of the litigation below.  Furthermore, it was addressed by the trial court in its Rule 1925(a) opinion.  **See** Trial Court Opinion, 9/29/25, at 16.  Thus, we decline to find waiver and will address this fifth issue along with his other claims.  **See Mazzarese v. Mazzarese**, 319 A.3d 586, 589 n.2 (Pa.Super. 2024) (citing Pa.R.A.P. 2116(a)).

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa.Super. 2023) (cleaned up). Moreover, it is not our function "to determine whether the trial court reached the right decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion[.]" *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005) (cleaned up).

In Grandfather's first claim for relief, he asserts that the trial judge demonstrated bias, which he contends "undermined" confidence in the court's "neutrality." Grandfather's brief at 13-15. Our review of the certified record, however, indicates that he never raised any claim of judicial bias in the trial court, nor did he seek the recusal of the jurist assigned to this case. Furthermore, this issue was omitted from Grandfather's Rule 1925(a)(2)(i) concise statement, thereby failing to give the court the opportunity to respond to the allegation in its opinion. *See* Concise Statement, 8/13/25, at ¶¶ 1-11.

The failure to preserve this issue in his concise statement, alone, results in waiver of the claim. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in

the [s]tatement . . . are waived."); *see also U.S. Bank, N.A., et al. v. Hua*, 193 A.3d 994, 996-97 (Pa.Super. 2018). It is also axiomatic that this Court "presumes judges are fair and competent[.]" *Lomas v. Kravitz*, 170 A.3d 380, 389 (Pa.Super. 2017). Our Supreme Court has explained, "[o]nce the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unreasonable result." *Reilly by Reilly v. Southeastern Pennsylvania Trans. Authority*, 489 A.2d 1291, 1300 (Pa. 1985). Based upon the foregoing, Grandfather has waived his claims concerning alleged judicial bias. *See* Pa.R.A.P. 1925(b)(4)(vii); *Reilly*, 489 A.2d at 1300; *U.S. Bank*, 193 A.3d at 996-97.

In his second claim for relief, Grandfather asserts that his constitutional due process rights were violated.[6] *See* Grandfather's brief at 24-26. He invokes the protections of the Fourteenth Amendment to the United States Constitution and Article I, § 11 of the Pennsylvania Constitution. *Id*. at 24. Specifically, Grandfather sets forth two bases for the alleged violations: (1) that the trial court imposed inappropriate restrictions on witness testimony; and (2) that his trial counsel failed to admit "corroborating exhibits and

---

[6] Many of the arguments presented in this section are duplicative of the claims concerning judicial bias. *See* Grandfather's brief at 26 (discussing allegations of "judicial interference"). Since we have already concluded above that these issues were waived, we will not discuss them further here.

communications" that would have supported his custody claims. *Id*. at 24-26.

Grandfather, however, never raised any objections based upon these constitutional grounds in the trial court, nor did he advance any arguments concerning violations of his due process rights. As such, these claims are also waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also Pennsylvania Bankers Ass'n v. Pennsylvania Dept. of Banking*, 962 A.2d 609, 622 (Pa. 2008) (providing that constitutional due process rights are subject to waiver).

Even if not waived, we would find these issues to be unavailing. We note that "[d]ue process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa.Super. 2005). As evinced by his participation in the underlying proceedings with the benefit of counsel, Grandfather was afforded notice of the proceedings he initiated and an opportunity to be heard regarding his custody complaint. *See generally* N.T., 7/8/25, at 56-138.

Although he argues the court "foreclosed testimony central to standing," our review reveals no corroboration for this claim in the pages cited by Grandfather. *Compare* Grandfather's brief at 24-25 (citing N.T., 7/8/25, at 103-09, 118-22) *with* N.T., 7/8/25, at 103-09 (testimony from Grandfather regarding his living situation in Pittsburgh); *id*. at 118-22 (testimony from

Jessica regarding the CYS referral concerning Mother and S.H.). It is entirely unclear why these particular passages were "central" to Grandfather's standing arguments. Furthermore, there is no indication therein that the trial court prohibited or restricted witnesses from testifying. *See* N.T., 7/8/25, at 103-09, 118-22. Indeed, the court did not issue any evidentiary rulings on the pages cited in this portion of his argument.

With respect to the merits of Grandfather's related arguments concerning counsel's purported failure to admit certain exhibits, he neglects to identify this evidence with specificity and particularity. Due to the paucity of his arguments, we cannot discern what the "corroborating exhibits and communications" referenced in his arguments may have been. *See* Grandfather's brief at 25. We can only speculate as to whether this evidence was probative, admissible, or merely illusory. As such, even if not waived, no relief would be merited.

Finally, we address Grandfather's remaining issues collectively, as they challenge the evidentiary basis of the trial court's ruling on standing. *See* Grandfather's brief at 16-23. He asserts the court erred in holding that he lacked standing pursuant to 23 Pa.C.S. § 5324(3).[7] *Id*. Our review of

_____

[7] In his concise statement, Grandfather originally argued that he also had standing to seek periods of partial physical custody pursuant to § 5325(2). This section provides standing for grandparents in certain situations when the parents of the subject grandchild have "commenced a proceeding for custody" and "do not agree" as to whether grandparents should have custody. *See* 23
*(Footnote Continued Next Page)*

questions pertaining to a grandparent's statutory standing to seek custody of a grandchild is subject to a *de novo* standard and a plenary scope of review. *See G.A.P. v. J.M.W.*, 194 A.3d 614, 616 (Pa.Super. 2018). We also emphasize from the outset that "standing is a conceptually distinct legal question which has no bearing on the central issue within the custody action – who is entitled to physical and legal custody of a child in light of his or her best interests." *M.S. v. J.D.*, 215 A.3d 595, 602 (Pa.Super. 2019) (cleaned up).

This Court has explained: "In child custody cases, the concept of standing is fluid and differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation." *E.A. v. E.C.*, 259 A.3d 497, 501 (Pa.Super. 2021). In addition to "assuring that actions are litigated by appropriate parties," standing principles in custody matters are intended "to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning." *Id*. Absent an "applicable statutory exception," third parties generally lack standing to intervene in custody cases. *Id*. In this context, "[p]ersons other than biological parents

_____

Pa.C.S. § 5325(2). Grandfather, however, has completely abandoned this claim in his brief. *See* Grandfather's brief at 1-28. Even if he had not abandoned this argument, we would readily dispose of it as he clearly is not eligible for standing pursuant to § 5325(2) because S.H.'s parents did not commence custody proceedings. *See* 23 Pa.C.S. § 5325(2)(i).

are 'third parties' for purposes of custody disputes." ***T.B. v. L.R.M.***, 786 A.2d 913, 916 n.6 (Pa. 2001).

The Child Custody Act, however, provides several exceptions to this general rule of exclusion, which apply primarily to grandparents and great-grandparents. ***See M.W. v. S.T.***, 196 A.3d 1065, 1069 (Pa.Super. 2018). Instantly, Grandfather argues that the trial court should have found he had standing pursuant to § 5324(3), which provides as follows:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> . . . .
>
> (3) A grandparent of the child who is not *in loco parentis* to the child:
>
>> (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
>>
>> (ii) who assumes or is willing to assume responsibility for the child; and
>>
>> (iii) when one of the following conditions is met:
>>
>>> (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
>>>
>>> (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
>>>
>>> (C) the child has, for a period of at least 12 consecutive months, resided with grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must

- 11 -

> be filed within six months after the removal of
> the child from the home.

23 Pa.C.S. § 5324(3).

In considering Grandfather's arguments, we note that much of his discussion has misapprehended the legal basis for standing pursuant to § 5324(3). Specifically, he has cited a number of cases that discuss *in loco parentis* standing to seek custody. ***See*** Grandfather's brief at 18-23 (citing ***T.B. v. L.R.M.***, 786 A.2d 913 (Pa. 2001); ***K.W. v. S.L.***, 157 A.3d 498 (Pa.Super. 2017)). His arguments also contain language suggesting that he is attempting to establish standing *in loco parentis*, which is governed by a different paragraph of § 5324.[8] ***Id***. at 18 (utilizing terms such as "functional parenthood based on consent and conduct"). For Grandfather's benefit, we note that § 5324(3) pertains to "[a] grandparent of the child who is **not** *in loco parentis* to the child[.]" 23 Pa.C.S. § 5324(3) (emphasis added). Thus, his reliance upon this caselaw and related line of argument is inapposite here.

To the extent that Grandfather's arguments invoke the appropriate legal standard, he asserts, incorrectly, that standing pursuant to § 5324(3) may be established by proving only that "an individual has assumed or is willing to assume parental responsibilities with the consent of a parent." Grandfather's brief at 18 (cleaned up). As detailed above, this is an incomplete statement

---

[8] The term "*in loco parentis*" literally means "in place of a parent." ***A.C. v. E.K.***, 331 A.3d 939, 945-46 (Pa.Super. 2025).

- 12 -

of the relevant statutory rubric. Specifically, standing pursuant to § 5324(3) consists of three necessary elements, namely: (1) a relationship between the child and the grandparent that began with the consent of a biological parent; (2) the grandparent has, or is willing, to assume responsibility for the child; and (3) the existence of one of the three conditions set forth at § 5324(3)(iii)(A)-(C). *See* 23 Pa.C.S. § 5324(3).

Assuming, *arguendo*, that Grandfather satisfied the first two statutory elements at § 5324(3), the trial court concluded that he failed to establish the existence of at least one of the three conditions set forth at § 5324(3)(iii)(A)-(C), as follows:

> As it relates to 23 Pa.C.S. § 5324(3), [S.H.] was not adjudicated dependent. Moreover, [Grandfather] failed to demonstrate by credible evidence that [S.H.] was substantially at risk due to abuse or neglect or drug and alcohol abuse or incapacity. To the contrary, this [c]ourt found that Mother is an exceptional parent. Finally, [S.H.] certainly has not been residing with a grandparent for a period of at least twelve months. This subsection is inapplicable.

Trial Court Opinion, 9/29/25, at 15. Critically, Grandfather neither acknowledged, nor discussed, this element in his brief. Upon review, we agree with the trial court's assessment.

With respect to § 5324(3)(iii)(A), the record clearly reflects that S.H. was not declared dependent. The record similarly reveals S.H. has never lived with Grandfather for any period of time, let alone twelve consecutive months. *See* N.T., 7/8/25, at 6, 107, 115-16. Thus, § 5324(3)(iii)(C) is also inapplicable. Based upon the foregoing, the only truly "disputed" standing

subsection in this case was § 5324(3)(iii)(B), which "grants standing to grandparents to file for any form of physical or legal custody when their grandchild is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity[.]" *G.A.P.*, 194 A.3d at 619.

The trial court found that the testimony and evidence pertaining to Grandfather's concerns about S.H.'s safety and Mother's mental health lacked credibility: "This [c]ourt considered all evidence presented at the hearing and determined that no risk to [S.H.'s] welfare existed under [Mother's] care." Trial Court Opinion, 9/29/25, at 16. Instead, the court credited testimony indicating Mother was a "dedicated" and "concerned" parent. *Id*. It concluded that no credible evidence "was introduced that [S.H.] was anything but happy, healthy, well-cared for, and loved." *Id*.

Our review of the certified record finds sufficient support for the trial court's evidentiary conclusions pursuant to § 5324(3)(iii)(B). In her testimony, Mother averred that S.H. was "very healthy" and "happy" since his birth. *See* N.T., 7/8/25, at 6-7. Mother also attested that S.H. has always maintained a "normal" weight while in her care. *Id*. at 8. By way of corroboration, Mother introduced over two dozen pictures of S.H., which spanned from the time when her family members first began alleging that he was underweight until a few weeks prior to the hearing. *Id*. at 6-17.

In reviewing these photographs, Grandfather and Jessica each conceded that S.H. appeared to be a healthy, normal weight. *Id*. at 93-97, 140. Krista

similarly testified that her earlier worry about S.H.'s weight had not been well-founded. *Id*. at 60 ("[H]e is a good weight, and I have never had concerns about his weight after that.").

Grandfather, Jessica, and Krista each also expressed disquiet regarding Mother's mental health. *Id*. at 58-59, 100-03, 121. These allegations were directly opposed by Mother's testimony, wherein she denied having any significant mental health issues. *Id*. at 21-22. Her friend, Ms. Clemmons, testified along similar lines that Mother was "patient, loving, attentive, caring" and showed no signs of suffering from a mental illness or incapacity. *Id*. at 43.

As this Court has explained, "a trial court has discretion to accept or reject a witness'[s] testimony, . . . , and is free to believe all, part, or none of the evidence presented." *In re G.M.S.*, 193 A.3d 395, 402 (Pa.Super. 2018). The trial court was within its discretion to credit the testimony of Mother and Ms. Clemmons and discount the testimony of Grandfather, Jessica, and Krista. Overall, we find that Grandfather's arguments pursuant to § 5324(3) amount to little more than an invitation for this Court to substitute its credibility determinations for that of the trial court. Our case law, however, prohibits us from overriding the trial court's findings in this fashion where, as here, they are supported by the record. *See Rogowski*, 291 A.3d at 60-61.

Based upon the foregoing, we observe no abuse of discretion or error of law in the trial court's holding that Grandfather lacked standing pursuant to

§ 5324(3). The trial court's findings are well-supported by the certified record. Accordingly, we affirm the order dismissing Grandfather's complaint.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/3/2026